# WHEELING.

## FOWLER v. THOMPSON.

Submitted January 19, 1883—Decided July 7, 1883

(*SNYDER, JUDGE, Absent.)

1. The county courts of this State, as they existed on the 12th day of October, 1880, notwithstading the adoption of the amendment of article VIII. of the Constitution continued in existence with the limited jurisdiction prescribed by the 24th section of said amendment, until the 1st day of January, 1881, after which day the said county courts were no longer *composed of a "president and two justices of the peace,"* but of *the three commissioners* mentioned in the 22d section of said *amendment.*   (p. 119.)

2. That until the said 1st day of January, 1881, the said county courts could rightfully exercise the *limited jurisdiction,* prescribed by said 24th section of said amendment, at the regular terms of said courts, in accordance with the laws then in force. (p. 116.)

*Counsel below.

3. The limited jurisdiction remaining vested in said courts, after the adoption of said amendment, on the 12th day of October, 1880, included "all matters of probate, the appointment and qualification of personal representatives, guardians, curators and committees, and the settlement of their accounts, and all matters relating to apprentices; also the superintendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of roads, ways, bridges, public landings, ferries and *mills*, with authority to lay and disburse the county levies; to grant licenses, for the sale of intoxicating liquors, in certain cases, and in *all cases of contest, to judge of the election, qualification and returns of their own members, and of all county and district officers.*" (p. 119.)

4. Sections 30, 31, 32 and 33, of the Acts of the Legislature 1872-73, prescribing the time and manner in which the election of county and district officers might be contested, not being repugnant to the provisions of said amendment, continued in full force and effect, after the adoption thereof. (p. 116.)

5. The appellee having within the time and in the manner prescribed by law given to the appellant notice that he would contest his election to the office of prosecuting attorney for the county of S. and said appellant having in like manner given to said appellee the counter notice prescribed by law, both parties appeared before the county court of said county of S. at the November term thereof, 1880, and on their several motions, the said notice of contest and counter notice were docketed in said court, and by operation of law continued; and no other term of said court being held until the 18th of January, 1881, when the county commissioners held their first term of said court, at which no proceedings in said contest were had; the said parties appeared at the March term thereof, 1881, and contestant moved the court to proceed with the trial thereof, which the court refused to do on the ground that at the said November term the county court had ceased to exist, and for that cause no contest was pending which could be tried at said March term, and the circuit court of said county, having upon a writ of *certiorari* reversed the said judgment of said court and remanded the cause to be further proceeded in according to law. HELD:

That there was no error in the said judgment of said circuit court, and that the cause was rightfully remanded. (p. 119.)

6. In the case of a contested election of a county or district officer, or of any or all of the commissioners composing the county court, the proper mode of bringing the proceedings before the circuit court for review, is by *writ of certiorari*, upon the hearing of which the circuit court, if there be no error, will affirm the same, but if they be erroneous, will reverse the judgment and remand the cause to the county court for further proceedings. (p. 120.)

7. A case in which the doctrine in regard to the proceeding upon a *writ of certiorari*, in the case of a contested election—as laid down in *Dryden* v. *Swinburne*, 15 W. Va. p. 234, and in *Swinburne* v. *Smith, Judge, &c., Ibid.* p. 483—is approved and reaffirmed. (p. 120.)

WOODS, JUDGE, furnishes the following statement of the case:

At the general election on the 12th day of October, 1880, in Summers county, Elbert Fowler, William R. Thompson, and J. W. Malcom were candidates, and were voted for, for the office of prosecuting attorney of said county.  On the 19th day of October, 1880, the commissioners conducting said election at the court house of said county, made and delivered to said Thompson a certificate of the result of said election for the office aforesaid, whereby it appeared, that at said election for said office of prosecuting attorney, said Wm. R. Thompson received six hundred and seventy-three votes, said Elbert Fowler received six hundred and forty votes, and said J. W. Malcom received three hundred and eighty-seven votes.  On the 28th day of October, 1880, the said Fowler prepared and caused to be served upon the said Thompson a notice, that for the causes therein stated, he would contest his said election, which notice afterwards on the same day was filed in the clerk's office of the county court of said county and the filing thereof, was by the clerk of said court endorsed thereon.

On the 5th day of November, 1880, the said Thompson prepared and caused to be served on the said Fowler, a counter notice, denying contestant's right, and alleging, that for the causes therein stated he would maintain his right to the said office, which last notice, was on that day returned to, and in like manner filed in said clerk's office, and endorsed by said clerk.

At the November term, 1880, of the county court of said county, the said Fowler appeared in said court, and on his motion the court entered an order docketing said notice of contest, and the said Thompson also appeared, and on his motion his said counter notice was in like manner filed and docketed, but no further proceedings were had thereon, at that term, and it does not appear that any other term of said court

was held in said county during that year.    On the 18th day of
January, 1881, being the third Tuesday in that month, two of
the commissioners elected under the twenty-second section
of article eight of the constitutional amendment adopted on
the 12th of October, 1880, held the first term of the county
court of said county, after the adoption of said amendment,
but no proceedings were then had upon said contested elec-
tion, but the said county court at that term transacted other
business within its jurisdiction, and among other things, it
*fixed upon, by an order entered upon its record, the times for hold-
ing the four regular terms thereof* prescribed by said twenty-
second section of article eight of said amendment; and there-
by ordered that said regular terms of said county court,
should be held on the third Tuesday in January, March, July
and November in each year until otherwise ordered.

At the March term of said county court, 1881, the said
Fowler and Thompson again appeared, and upon the produc-
tion of said notice of contest, and said counter notice and the
said order made in regard thereto at said November term,
and moved the court to proceed with the trial thereof, which
motion was resisted by the said Thompson on the ground
that there was no such cause in said court, that the same
had never been docketed *therein*, and that the order made in
said county court in regard thereto at said November term,
was a nullity, as at that time there was no such body as the
county court of Summers county *composed of justices*, that the
same had been abolished by the adoption of said constitu-
tional amendment, which motion to try said cause the court
for the reason aforesaid, overruled, to which ruling of said
court, the said Fowler excepted.

 On the same day—after said county court had for the cause
aforesaid refused to take up and hear said contested election,
—the said Fowler, again produced and tendered in said court,
his said notice of contest and *all the papers accompanying the
same, being the same* papers referred to in his first bill of ex-
ceptions, together with the proof of the service and filing
thereof, and moved the said court to docket his said notice
of contest in said court, and proceed with the trial thereof,
which last motion being resisted by the said Thompson, the
court overruled and refused to docket or try the said contest,

to which last ruling Fowler again excepted. A third bill of exceptions was taken by said Fowler to the judgment of said court overruling his motion to continue the trial of his said contest until the next term of said court, as one of the county commissioners was absent, and the two then present holding said court were divided in opinion as to what judgment should be rendered on his said several motions overruled as aforesaid.

The said Fowler on the 22d April, 1881, applied for and obtained from Hon. H. Holt, judge of the circuit court of Summers county, a writ of *certiorari* to the said judgment of said county court. Upon the hearing of said writ, the circuit court of Summers county reversed the said judgment of said county court with costs, and remanded the cause to the said county court for further proceedings therein to be had according to law.

From this judgment of said circuit court, the defendant Thompson obtained a writ of error to this Court.

*James H. Ferguson* for contestant.

*E. W. Wilson* for contestee :

I. There can be no statutory contest in this case, because there was no organized county court existing in which a contest could be instituted, within the time prescribed by § 32, ch. 118, Acts 1872-3, to-wit: Within sixty days from the declaration of the result of the election—the time allowed for qualification. Section 2, Art. 4, State Cons., 1872; Art. 8 *Id.*; Joint Resolution No. 10 p. 175, Acts 1879; ch. 49 *Id.*

(1a) There can be no *de facto* government in lieu of the *de jure* government in times of peace; and there can be no *de facto* office in a constitutionally organized government.

(2a) An officer, to be continued in office on the adoption of a new constitutional provision, must have held the same office under the old, unless specially provided for; therefore a justice of the peace cannot hold the office of county commissioner as a *de facto* officer.

(3a) The acts of a *de facto* officer may be sustained in the interest of the public and third parties, but no person can be compelled to act as a *de facto* officer.

II. A statutory contested election case can only be brought

from the county court on *certiorari*, and a circuit court should dismiss such case brought up in any other manner. *Swinburne* v. *Dryden*, 15, W. Va. 234, &c., 483, &c.

Woods, Judge:

The only important question arising in this cause is, *whether the county courts* of this State *created* by, and *existing under the Constitution* of 1872, *ceased to exist*, for *all purposes* of their creation from and after the adoption of the *amendment* of the eighth article of said Constitution, on the 12th day of October, 1880 ?

It is contended by the appellant that from and after the 12th day of October, 1880, the county courts established by the Constitution of 1872, and then existing, for all and every purpose of their creation, ceased to exist, and that by the ratification and adoption of the proposed amendment, the said county courts were instantly and *ipso facto* abolished, and that any act done by them or any of them, after that day was null and void; in other words, that all actions at law or suits in equity then pending in said courts on that day were not only transferred to the circuit courts, but that such county courts were instantly and forever closed, and prohibited from exercising their constitutional jurisdiction over the police and fiscal affairs of their counties, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, and appointing and qualifying personal representatives, guardians, committees, curators, and settling their accounts, and in cases of contest, of judging of the election, qualification and return of their own members, and of all county and district officers, of which they possessed under the Constitution of 1872, and of which they were not divested by the said amendment, nor was the same thereby transferred to any other tribunal.

Can this proposition be maintained ?   Is this Court upon a fair construction of said amendment, constrained to hold, that from the 12th day of October, 1880, to the 1st of January, 1881, no court could exercise jurisdiction over any of the subjects theretofore committed, by the Constitution and laws then in force, to the exclusive jurisdiction of the said county courts ?

We are of opinion upon a careful examination, and a fair construction of the said amendment, that a construction fraught with so many public inconveniences, so much public injury, and involving in so much peril, the estates of infants, lunatics and decedents, can be avoided, and ought not to be adopted, unless the provisions of said amendment are so clear and imperative, as to leave this Court no room to consider or adopt any other.

The only material changes made by said *amendment* in regard to the county courts then established, and existing under the Constitution of 1872, are, that from and after the 1st day of January, 1881, the said courts should no longer be composed of a *president and two justices of the peace,* but instead thereof, said *county courts* should be composed of *three commissioners,* whose election is therein provided for, who shall continue in office six years, and who, while required to hold *four* instead of *six* regular terms in every year, they are divested of jurisdiction over all subjects, *except those particularly specified in the twenty-fourth section of said amendment.*

The first section of the eighth article of the Constitution of 1872, declared that the judicial power shall be vested in a Supreme Court of Appeals, and in circuit courts, and the judges thereof; in county courts and in justices of the peace. The twenty-third section of said article declared, "there shall be in each county of the State a county court, which shall be composed of a president and two justices. It shall hold six terms during the year, two of which shall be limited to matters connected with the police and fiscal affairs of the county, the other four shall be held for the trial of causes, and for the transaction of all other business within the general jurisdiction of the court, except an assessment or levy upon the property of the county." Section twenty-seven of said article declared that "the county court shall have original jurisdiction in all actions at law, where the amount in controversy exceeds twenty dollars, and also in all cases in *habeas corpus, quo warranto, mandamus, prohibition and certiorari,* and in all suits in equity. It shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees and curators, and the settlement of their accounts, and in all matters relat-

ing to apprentices, and in all criminal cases under the grade of felonies. *But the jurisdiction of the county court shall be subject to such limitations as may be prescribed by law."* The twenty-eighth section of said article declared that said county court shall also have the superintendence and administration of the internal police and fiscal affairs of the county, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay and disburse the county levies and to grant licenses, (in certain cases). It shall in all contested cases judge of the election, qualification and returns of its own members, and of all county and district officers, and it shall exercise such other jurisdiction, and perform such other duties, as may be prescribed by law. Section twenty-nine of the said article conferred jurisdiction upon the county court to hear all appeals from the judgment of justices and finally determine the same, except in a few excepted cases.

In this connection it may be proper to remark, that while, such extensive jurisdiction, was by the Constitution of 1872, given to the county courts, yet the Legislature by the same article conferring said jurisdiction, was vested with *unlimited power and authority to limit* or take away the *whole or any portion* of such jurisdiction, whenever in its wisdom, it might deem necessary to do so, and such limitation when made by the Legislature, needed no ratification by the voters of the State. It *could at its will and pleasure restrict, limit or take away* the *whole* of such jurisdiction, whenever it deemed the public wellfare desired it; and a subsequent Legislature could have restored it.

This jurisdiction so conferred on the county courts, with very few exceptions, was co-equal, as well as concurrent, with the jurisdiction conferred on the circuit courts, and was in many respects superior to it—as over many subjects, the jurisdiction of said county courts, was practically an exclusive jurisdiction. The said county courts, on the 12th day of October, 1880, were by virtue of the laws then in force in the full exercise of all this jurisdiction. They admitted wills to probate, they appointed and qualified personal representatives, guardians, committees and curators, and settled their accounts; they heard and determined con-

troversies in regard to establishing roads, bridges, public landings, ferries and mills; they took and approved the official bonds of the sheriffs, constables and many other officers; they received, certified and allowed the sheriffs' lists of delinquent taxes; and certified the same to the Auditor and discharge many other important public duties, affecting the estates of the citizen. Being in cases of contest the judges of the election, qualification and return of their own members and of all other county and district officers, they were by law authorized, and they. *alone* were authorized and required to hear and determine the same, within a period of sixty days from the date of the certificate of such election. These were some of the important duties, which on that day could be performed by said county courts. In case of a contest, in regard to the election of a county officer, no other tribunal had authority or jurisdiction over it. If then, these county courts for all purposes ceased to exist after the 12th day of October, 1880, it follows, that from that day until the county court provided for by said amendment, should be inducted into office, which could not occur before the 1st day of January, 1881, many of the most important powers of the State, essential to the welfare and good government of the people thereof, would have been in a condition of absolute suspension; a condition never *presumed* to exist, and never existing, except in a condition of affairs closely bordering on anarchy.

The act of the Legislature passed on the 7th of March, 1879, providing for the submission of the said amendment to the voters of the State, which must be taken and held to perform the purpose of a schedule to said amendment, declares (sec. 2) that "all the provisions of the law relating to general elections so far as applicable shall apply to the election held under the provisions of this act, except where it is otherwise provided therein." The returns of said election could not be laid before the Governor, to ascertain and proclaim the result, until the 25th day after said election, which was on Saturday, the 6th day of November, 1880, before which last named day the *November terms* of the county courts of the counties of *Cabell, Fayette, Hardy, Jackson, Mason, McDowell and Taylor*, would have commenced, or passed; and before

the result of said election could have been ascertained and proclaimed by the Governor, or been known over a large portion of the State, the *November term* of the county court of other counties would have been held. While the fact does not appear in the transcript of the record in this cause, the Court deems it extremely probable that other county courts in the State at the November terms thereof in 1880, beside the county court of Summer county, transacted its usual business upon all matters within its jurisdiction excepting only the trial of causes then pending therein and which were by the express terms of section 25 of said amendment, transferred to the circuit courts. If at the said November term of said courts the courts had appointed and qualified personal representatives, guardians, curators, or committees, or settled the accounts thereof and the construction contended for, be correct, then irreparable injury might be done to the estates of decedents, infant children, lunatics, &c., and discovered only when too late to prevent the loss, or arrest the evil. Sections 8 and 9 of said statute further provide, that at said election, the voters were required to elect in each county three commissioners as provided for in sections 22 and 23 of said amendment, and that said election should be conducted by the same officers, in the same manner, as provided for in section 7 thereof, "and the certificates and returns shall be made and the result ascertained in the same manner, as is now prescribed by law, for the election, certificates and returns of *county officers*, and that if said proposed amendment shall be ratified, the terms of the officers whose election is provided for in this act shall commence on the 1st day of January, 1881."

It is apparent from the provisions of this act of the Legislature that it *thereby recognized* the continuing authority of the said county courts and of the officers appointed by them to conduct said election, and to ascertain the result thereof in regard to all county and district officers, including among them the said commissioners who are county officers. And as the *greater always includes* the *less*, it recognized the authority of said county courts to do all acts *necessary to be done*, in order to ascertain and certify the correct result of said election for every county and district officer in case of a con-

test, unless expressly prohibited from doing so. The right to hear and determine said *contest*, is only one of the means of ascertaining the correct result of such election. And when we bear in mind, that the right of *one* or *all* of said *commissioners* might have been contested in the same manner as any other county officer, and that this contest like others is required to be commenced at the November term of the county court of said county next after the election, or if there be no November term in the county wherein such contest shall arise, then, at the next term thereafter, and may not be continued beyond the time designated for such officer to qualify, and that this period must expire before the said commissioners go into office, we cannot resist the conclusion, that the Legislature in proposing said amendment, and in the *act* submitting the same to the voters for ratification, and in providing for the election of said commissioners, intended that the said county courts should continue in the exercise of the authority necessary in case of a contest to ascertain and certify the correct result of said election in pursuance of existing laws. The exercise of this authority is not inconsistent with, nor repugnant to, any of the provisions of said *amendment*, but is consistent therewith, and absolutely necessary to carry out one of the principal purposes thereof, viz., to elect *three commissioners* in every county of the State, to ascertain the result thereof in case of a contest, and declare and certify who shall, after the 1st of January, 1881, compose the *county court* of each county.

As if to remove all doubt on this point as to what laws should control this election, the twenty-first section of said amendment declares, " That such parts of the common law, and the laws of this State as are in force when this article goes into operation, and are not repugnant thereto shall be and continue the law of this State until altered or repealed by the Legislature."

We are of opinion, that a fair construction of the several provisions of the amendment itself, will fully sustain these views, and will show that the effect of said amendment was not, instantly and absolutely, upon its adoption, to abolish and destroy the old county courts, and prohibit them from the exercise of so much of their former jurisdiction as was not

pretended to be taken from them by said amendment, but which on the contrary was by the express provisions thereof, continued to the county courts thereafter to be organized under the said amendment. The first section of the amendment, declares that; "The judicial power of this State shall be vested in a Supreme Court of Appeals, in circuit courts and the judges thereof; in such *inferior tribunals* as are *herein authorized,* and in justices of the peace."

By the first clause of the nineteenth section of the *amendment,* the twenty-second section of the eighth article of the Constitution of 1872, is substantialy re-adopted, or, perhaps more correctly speaking, the said twenty-second section remains unchanged and the Legislature is authorized "to establish courts of *limited jurisdiction* within any county, incorporated city, town or villiage;" and by the second clause of said nineteenth section, of said *amendment,* it is declared "that all courts of *limited jurisdiction* heretofore established in any *county,* incorporated city, town or villiage, shall *remain* as at *present constituted,* until otherwise provided by law." Now it was well known to the Legislatnre when this *amendment* was proposed, that no court of limited jurisdiction in the *proper sense* of that *term,* existed, or could have been created in any *county* of this State. No authority existed under the Constitutions of 1863 or 1872 for the creation of *courts of limited jurisdiction,* in any *county* of this State, and therefore none ever existed. The power to create such courts was, by both of said Constitutions confined to *"incorporated towns, or cities."* As in the construction of statutes, and especially of all constitutional provisions, some meaning consistent with the general purpose of the whole instrument, is if possible to be given to every *clause, sentence and word,* contained therein, we are bound to conclude that when the *Legislature* by the second clause of said nineteenth scetion of said amendment, declared that "all courts of *limited jurisdiction* heretofore established in *any county*" &c., "shall remain as at present constituted until otherwise provived by law," that it did not use the expression "courts of *limited jurisdiction,*" in its strict legal technical sense,—but in the sense of an *"inferior tribunal,"* designated in the first section of said *amendment,* as one "therein authorized;" and

that there is no other existing court, to which the Legislature with any degree of propriety could have applied it, except to the *county courts* then existing in every county of the State, except the county of Ohio, we must presume that it was intended to embrace and include the said *county courts* then existing in the several counties of the State, which were to remain as then constituted, exercising the jurisdiction which by the amendment still remained vested in them, until otherwise provided by law, which provision was made by the *amendment* itself, and would take effect, after the 1st of January, 1881, when the said commissioners would be inducted into office.

This conclusion is rendered almost irresistible, when we examine the provisions of the twenty-fourth section of said *amendment* which in express terms continues in existence such tribunals then existing, as had been theretofore established, for police and fiscal purposes, in lieu of the county courts, by virtue of the thirty-fourth section of the eighth article of the Constitution of 1872.

*Such court*, at the time said *amendment* was proposed, existed only in the county of Ohio—although the Legislature at the same session authorized similar tribunals to be established in the counties of Preston and Pendleton, and in no others. In all other counties the county courts established by the Constitution of 1872, alone existed and they all had, and exercised the superintendence and administration of the internal police and fiscal affairs of the several counties, and also in all contested cases they were required to judge of the election, qualification and return of its own members and of all county and district officers.

Why should these tribunals established in lieu of the *county court* for police and fiscal purposes be continued in existence as then constituted until otherwise provided by law, unless it was understood and intended that in the other counties, the county courts were also continued in existence to the same extent, and the same purpose?

By the 22d, 23d and 24th sections of the *amendment*, it is provided that "there shall be in each county of the State a county court"—the precise words of section 23 of article 8, of the Constitution of 1872—in the one case to be composed

of a "president and two justices of the peace," in the other of three commissioners.    It is still the county court, with the same records, the same clerk, but divested of its jurisdiction to hear and determine any causes of controversy excepting those embraced in the twenty-fourth section of said *amendment*.    After the 1st of January, 1881, instead of being composed of a president and two justices of the peace, it was to be composed of three commissioners.    Of a large part of its jurisdiction conferred on the county court by the Constitution of 1872, it was never in any manner divested.    If any part of its jurisdiction should be beyond dispute, it seems to us that it is its *exclusive* right in cases of contest to judge of the election, qualification and return of its own members, and of all county and district officers, including of necessity the office of prosecuting attorney.    We are therefore of opinion that the county courts of this State as they existed on the 12th day of October, 1880, continued in existence with the limited jurisdiction prescribed by the twenty-fourth section of the said amendment until the 1st day of January, 1881, and could rightfully exercise such limited jurisdiction at the regular terms of said courts in accordance with the laws then in force; and that among the subjects over which it could thus rightfully exercise such limited jurisdiction, were all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators and the settlement of their accounts, and all matters relating to apprentices; also for the superintendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay and disburse the county levies, to grant licenses for the sale of intoxicating liquors (in certain cases) and in *"all cases of contest to judge of the election, qualification and return of its own members, and of all county and district officers."*

From these premises, it follows that the contestant, Fowler, rightfully filed his notice of contest in the county court of Summers county at the November term thereof, 1880, and that said court thereby obtained and had rightful jurisdiction to hear and determine the same in accordance with the laws then in force on that subject, and that the said court should

have proceeded to hear and determine the same. And the said court having by its orders and proceedings had in said matter of contest at the March term thereof, 1881, informally, but in legal effect wrongfully dismissed the said notice of contest, the cause was rightfully carried by *writ of certiorari* to the circuit court of said county to determine the questions of law arising in said proceedings. That this is the proper form of proceeding in the case of a contested election to bring the proceedings of the county court for review before the circuit court, has been decided by this Court in the cases of *Dryden* v. *Swinburne*, 15 W. Va. p. 234, and of *Swinburne* v. *Smith, Judge, &c.*, 15 W. Va. p. 483. It was also decided upon said causes that upon the hearing of the *certiorari*, the court should, if there be no error, affirm the judgment of the county court, and if it be erroneous reverse the same, and remand the cause to the county court to be further proceeded in according to law. There is therefore no error in the said judgment of the circuit court of Summers county rendered in said cause on the 10th day of May, 1881, nor in the order entered therein by said court on the 13th day of July, 1881.

The said judgment of the circuit court of Summers county is therefore affirmed, with costs to the appellee and thirty dollars damages.

JUDGES JOHNSON AND GREEN CONCURRED.

JUDGMENT AFFIRMED.