# CHARLESTON.

## MAYER *v.* ADAMS.

Submitted September 9, 1885.—Decided December 5, 1885.

1. A special session of a county court can only be held legally, after a notice of the time of such special session and the purposes, for which it will be held, shall have been posted by the clerk of said court at the front-door of the court-house of the county at least two days before said session is to be held. (p. 252.)

2. And to give such special session any jurisdiction in any matter it must appear upon its record-book, that such a notice, as is above described, was so posted, and it must also appear from such entry on its record-book what were the purposes, for which the special session was to be held as stated in said notice.  (p. 255.)

3. If such an entry, as is above described, is not made on the record-book of such special session of a county court, everything, which may be done by the court at such special session, must be held to be an absolute nullity.  (p. 255 )

4. The jurisdictional facts necessary to give a court of special and limited jurisdiction a right to act must appear in the record of its proceedings, or such proceedings will be regarded as had without any jurisdiction and therefore as absolute nullities.  (p. 255.)

*Martin & Woods, W. B. Maxwell* and *P. Lipscomb* for plaintiff in error.

*A. B. Parsons* and *T. A. Bradford* for defendant in error.

Statement by GREEN, JUDGE:

At the general election in this State held October 14, 1884, John J. Adams and George A. Mayer were candidates for the office of clerk of the circuit court of Tucker county. On October 21, 1884, the commissioners comprising the county court of said county gave to John J. Adams a certificate, that he was elected to said office having received 407 votes, while his opponent Mayer received but 395 votes. On October 27, 1884, Mayer had regularly served on Adams notice of a contest before the county court for this office, in which notice the grounds of contest and specifications are set out in detail. The more prominent of these grounds is, that some twenty persons, naming them, not residents of that county for sixty days preceeding this election had at one precinct cast their illegel votes for Adams for said office, and it was only by the counting of these illegal votes that he was declared elected. The truth of the facts contained in this notice was sworn to by Mayer. This notice also stated that it would be docketed on the first day of the next regular term of the county court of Tucker, after it was served on Adams. There was however a failure to docket it regularly on that day. The court met on November 10, 1884, and adjourning till the next morning without taking any notice

of this contested election on its record. The next day for reasons set out in the order the court permitted this motion and notice of contest to be docketed as of the day before subject to all legal exceptions, and it was again docketed that day. A motion was made to quash this notice of contest, which was overruled by the court, and on the next day Adams filed his return notice to Mayer, in which he specified twenty-four persons by names, who he alleges, illegally voted at one precinct in the county for Mayer for this office besides others named who voted for him illegally at other precincts. The facts alleged in this notice were sworn to by Adams. This notice was left with Mayer's wife at his residence on November 5, 1884. A motion was made to quash this return-notice for want of proper service and for errors on its face, but the court amended the notice and refused to quash it, and on the same day on motion of the contestant, George A. Mayer, this cause was continued until the next regular session of the county court of Tucker.

The next regular session of that court was to be held on the second Monday in February, 1885. Exceptions were taken during this November term of the court to the various rulings of the county court, one by the contestant and two by the respondent, which bills of exceptions it is not deemed necessary to set forth. Several papers are then copied into the record, but they constitute no part of it, and whence they come or what they really are does not appear. One purported to be a notice for a call of a special term of the county court of Tucker to settle with the sheriff of the county and to try this contest about the circuit court-clerkship. It purported to be signed by the president and to be concurred in by one of the commissioners. The special session purported to be fixed for January 7, 1885. And there was also copied into the record, but it was no part of it, a notice to the third commissioner, that such special session would be held, with a sheriff's return thereon, that he had left a copy at Mayer's usual place of abode on January 5, 1885, there being nobody there. There was also copied into the record a notice to said Adams from said Mayer, that at the special term he would insist on a trial of this cause. It was served on his wife at his usual place of abode on January 2, 1885, and also upon his

counsel. The following are all the entries made in this case during this special term:

"And at another day, to-wit: At a called session of the county court of Tucker county held on Wednesday, January 7, 1885, at the court house thereof, pursuant to notice as provided for by section 6 of chapter 5 of the Acts of 1881. Present, John Jones, president, and James H. Lambert, commissioners composing the court.

"This day came the contestant, George A. Mayer, by his attorneys, and it appearing to the court that said contestee had due notice that contestant would insist upon a trial of this cause at this special session, and that said contestee, being solemnly called, came not, and it appearing to the court that said notice of contest has been at a former term of this court docketed, filed and continued, and it further appearing to the court that the contestee, John J. Adams, has been duly served with a copy of the contestant's additional notice of contest, and on motion of said contestant it is ordered that the additional notice be and the same is now docketed; and thereupon, on motion of the said contestant the court proceeded to hear the proof in this cause in support of said notice and additional notice, and not being able to conclude the same, this cause is continued until to-morrow morning at nine o'clock.

"And now at this day, to-wit: At another day of said called session of said court, held on Thursday, January 8, 1885, present, same members of the court.

"This day came the contestant, George A. Mayer, by his attorneys, and the court, having heard the evidence and argument of counsel for the contestant, doth consider and declare that at the election held on October 14, 1884, in the county of Tucker, State of West Virginia, for the office of clerk of the circuit court of said county for the term of six years, commencing on January 1, 1885, the contestant, George A. Mayer, received three hundred and ninety-three votes, and should have received three hundred and ninety-four (394), counting Martin Shahan's vote, who offered to vote at the polls in Licking district in said county for George A. Mayer, contestant for clerk of said circuit court, which said vote is now counted for said contestant, which would

make said contestant's legal vote in said county for said office three hundred and ninety-four legal votes (394).

"The contestee, John J. Adams, only received at said election 386 votes, (three hundred and eighty-six,) excluding the illegal votes cast for said Adams at said election and counted for him by the county court of the said county in declaring the result of said election, the aggregate of which illegal votes so rejected is 21 (twenty-one); and the court doth further consider and declare that the said George A. Mayer, at the time of said election, and at this time, and at the time said result was declared by the county court of the said county on October 21, 1884, is now and was then a citizen of the United States of America, and a citizen of the State of West Virginia, and entitled to vote in said State, in the county of Tucker, at the time said election was so held, and eligible to be elected to said office and to hold the same for the said term; it is therefore considered and declared by the court that said George A. Mayer at said election was duly and legally elected to said office, and is legally entitled to enter into and perform the duties thereof for said term.   It is further considered by the court that each party to this contest pay his own legal costs incurred herein, and doth consider and order that a certified copy of this order be delivered to the contestant, George A. Mayer, by the clerk of this court, who is declared elected by said court to said office.

"And on the same day of the said court, to-wit, on the day last aforesaid, came George A. Mayer, who has been by the county court of Tucker county declared duly elected clerk of the circuit court for the term of six years, commencing January 1, 1885, and thereupon the said George A. Mayer appeared in court and took the several oaths prescribed by law."

And, thereupon, on January 10, 1885, John J. Adams, presented his petition to the judge of the circuit court of Marion asking that an appeal from said judgment might be awarded him under sec. 47 of ch. 5 of Acts of 1881 for eleven errors in the proceedings specified in the petition, none of which I deem it necessary to notice except the tenth, which was as follows: "Said court erred in holding a special or called session of the court without having had notice of said

called or special session of said court posted at the front door of the court-house for the time and in the manner provided by law and the fact of such posting should appear by the record."

This petition had the usual certificate of counsel practicing in the circuit court of Tucker county, that in his opinion it was proper, that the above judgment should be reviewed by said circuit court of Tucker county, and there was also appended to it the affidavit of John J. Adams, that the said office in controversy was worth more than $100.00.

The following was the order made by the judge, to whom this petition was presented:

"The circuit court of Tucker county not being in session, the undersigned judge of the second judicial circuit of West Virginia, to whom the within petition for an appeal from the judgment of the county court of Tucker county was this day presented, hereby grants to the within named petitioner, John J. Adams, an appeal from and *supersedeas* to the judgment of the county court of Tucker county complained of in the within petition, rendered January 8, 1885, but not to take effect until a copy of this order shall be served upon George A. Mayer, the contestant, and until the said Adams, or some one for him, shall execute and file before the clerk of the circuit court of Tucker county a bond, with good security, approved by said clerk of said circuit court, in the penalty of $2,500.00, conditioned to pay all costs and damages that may be sustained by said Mayer, or any other person, by reason of said appeal and *supersedeas*, and conditioned to abide by and perform any order made by said circuit court in the premises.

"Given under my hand this January 12, 1885.

"A. B. FLEMING,
" *Judge Second Judicial Circuit.*
" *To the Clerk of the circuit court of Tucker county.*"

The appeal-bond is copied into the record but constitutes no part of it; for as copied it is not under seal.

The following is the final order made by the circuit court of Tucker county on this appeal on May 14, 1885:

" This day came as well the appellant, John J. Adams, by his attorneys, as the appellee, George A. Mayer, by his attorneys, and the court having maturely considered the matters

arising upon the said petition and the transcript of the record of the proceedings of the county court of Tucker county filed with said petition, and having heard the argument of counsel, doth consider that there is error in the judgment of the county court of Tucker county rendered on January 8, 1885, and proceeding to correct such error, it is further considered by the court that said judgment be reversed and annulled, and that the appellant Adams recover from the appellee Mayer his costs herein. And this cause is remanded to said county court for further proceedings therein to be had."

A motion was made then to permit the sheriff to amend his return of the service of the notice of the special session of the court on the commissioner who did not concur in the holding of it. Which being objected to, the court refused to permit such proposed amendment to this return by the sheriff to be made.

A writ of error was awarded by a judge of this Court to the final order made by the circuit court of Tucker county in this contested election case overruling and annulling said judgment of the county court of Tucker county rendered January 8, 1885, and adjudging costs against appellee, Mayer, and remanding the case to the county court of Tucker county for further proceedings therein to be had.

Opinion by GREEN, JUDGE:

The question, whether the special session of the county court of Tucker, which was commenced on January 7, 1885, and which on the next day decided the contested election-case in favor of George A. Mayer as the party, who had been duly elected at the preceding general election clerk of the circuit court of Tucker, had jurisdiction to render any decision in this case, is a preliminary question, which we must first decide. If the court had not jurisdiction, the judgment it rendered on January 8, 1885, was a mere nullity, and the judgment of the circuit court of Tucker rendered on the appeal on May 14, 1885, reversing and annulling the judgment of the county court was proper. If on the other hand this special session of the county court of Tucker had jurisdiction, then we must consider the case on the merits as presented by the record and affirm this judgment or else reverse it and enter

up such judgment, as the said county court at this special session should have entered.

Superior courts of general jurisdiction are presumed to have jurisdiction of every particular case, which comes before them; and if the contrary is alleged, it must be proven. On the other hand inferior courts of limited jurisdiction are not presumed to have jurisdiction of the particular case on which they have acted. It must be made to appear affirmatively that the case fa'ls within the defined limits of their jurisdiction. The county courts in this State and in Virginia were formerly·courts of general jurisdiction. But the character of these courts in this State was essentially changed by the amendment of our constitution made in 1880. They are now inferior courts of limited jurisdiction. Their character and jurisdiction are prescribed in sec. 24, Art. VIII of our constitution. (See Warth's Code, p. 27.) Their jurisdiction now extends only to all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators and the settlement of their accounts; and to all matters relating to apprentices, and to the superintendence and administration of the internal police and fiscal affairs of their counties including the establishment of roads, ways, bridges, public landings, ferries, mills with authority to levy and disburse the county levy and in all cases of contest to judge of the election, qualification and returns of their own members and of all county and district officers, subject to such regulations by appeal or otherwise, as may be prescribed by law.

On February 11, 1881, the Legislature passed an act, ch. 5 of Acts of 1881, page 21, Warth's Code, ch. 39, p. 252, which was intended to put this provision of our amended constitution into force. By sec. 6 of this act each county court was to hold four regular terms a year, and this section further provides: "It may also hold special sessions, whenever the public interest may require it, to be called by the president, with the concurrence of at least one other of said commissioners; and the commissioner if any not concurring therein, must have at least twenty-four hours' notice of the time appointed for such special session. A notice of the time of such special session, and of the purpose for which it will

be held, shall be posted by the clerk of said court, at the front-door of the court-house of the county, at least two days before said session is to be held." And on March 16, 1882, (see Acts 1882, p. 304, ch. 6 of Warth's Code, p. 60,) provision was made for carrying on before the county courts these contests for county offices, under the authority of which this contest has been commenced; and there is no question but that the county court of Tucker had under our constitution and laws jurisdiction of this contested election-case. But did it have jurisdiction to hear and determine this case at the special session of this court held January 7, 1885? As the judgment of any court is absolutely void, if it appears, that there was a want of jurisdiction, the marked difference between courts of general and of limited jurisdiction is that in the one case, where the contrary does not appear, it will generally be presumed that it had jurisdiction, while in the other the presumption will be against the jurisdiction, unless it appears. But even though a court be a superior court of general jurisdiction, still, when the particular proceedings are not according to the course of common law but under a statute giving a summary remedy, the record on its face should generally show, that the particular case comes within the statute, and that the statute has been followed. (*Rex* v. *Liverpool Mayor*, &c., 4 Burrows 2,245; *Rex* v. *Bagshaw*, 7 T. R. (363) 359; *Cooper* v. *Sunderland*, 3 Iowa 123.)

As was said by Miller, delivering the opinion of the court in *Harney* v. *Tyler*, 2 Wall. 342: "Powers may be conferred on the court and duties required of it to be exercised in a special and often summary manner, in which the order or judgment of the court can only be supported by a record which shows it had jurisdiction of the case." See also *Ransom* v. *Williams*, 2 Wall. 318. But we need not rely upon cases of this description for the county courts in this State at their special sessions are not courts of general jurisdiction but are inferior courts of very limited jurisdiction. Their jurisdiction is not only limited to such cases as the county courts had jurisdiction of, but at the special terms it is by the statute we have quoted confined to the transaction of such business as the public shall have been notified they would attend to by a notice thereof posted by the clerk of the court at the front-

door. of the court-house of the county at least two days before the session. It is necessary therefore that the record of such a special session of the county court should on its face show, that such notice was so posted at the front-door of the court-house of the county, and that the particular case or business, which the county court has undertaken to hear and determine or to transact, comes fairly within the purpose named in such notice, as the purpose, for which such special session was particularly called. As was well said by the court in the *People* v. *Koeber*, 7 Hill. 141 :

" It is an elementary principle that no proceeding of a court or magistrate of special and limited power will be held legal, unless competent power for the purpose is shown. Jurisdiction in such case is not to be presumed, but must be proved. A general averment of jurisdiction amounts to nothing ; but the facts upon which it depends must appear. (*Cleveland* v. *Rogers*, 6 Wend. 438 ; *Lauton* v. *Erwin*, 9 Wend. 237 ; *Ladbroke* v. *James*, Willes' Rep. 199; *Sollers* v. *Lawrence*, Code 413 ; *Dakin* v. *Hudson*, 6 Cowen 221.")

The third point of the syllabus in *State ex rel* v. *Ely*, judge, &c., 43 Ala. 568, is : "The record of a court of limited jurisdiction should contain every fact essential to confer jurisdiction." The court says, on p. 575 : "Even if the commissioners' court had authority to declare the office vacant, the record shows no facts giving jurisdiction. The simple judgment is stated. The record of a court of limited jurisdiction should contain every fact essential to confer the jurisdiction ; *Commissioners, &c., of Talladegee* v. *Thompson*, 15 Ala. 134 ; *Malet* v. *Rencen*, 22 Ala. 484 : A declaration of the vacancy of an office by a court competent to. make the declaration is a judicial act. *Peck* v. *Holcombe*, 3 Porter 369."

If certain facts are required to be proven in order to give a court or judge special or limited jurisdiction, as for instance the posting of such a notice as we have named to give the county court jurisdiction at a special session, its action would be an absolute nullity; if there be a total defect of proof tending to establish such facts. But when there is some proof tending to establish these jurisdictional facts, though it be slight and inconclusive, if the court regard such jurisdictional

facts as thereby sufficiently proven and assumes jurisdiction, its action cannot be a nullity; for the court tried to decide whether the facts were proven on which its jurisdiction depended. [*Miller* v. *Brinkerhoff*, 4 Denis 118; *Staples* v. *Fairchild*, 3 Com. 46; *Den* v. *Turner*, 9 Wheat 541; *Regina* v. *Bolton*, 1 Ad. & E. 71, (41 Eng. C. L. R. 442).] In this last case Lord Denman puts the case clearly on p. 73–4, or pages 442–3 of 41 Eng. C. L. R., as follows: "When the charge laid before the magistrate, as stated in the information, does not amount in law to the offence over which the statute gives him jurisdiction, his finding the parties guilty by his conviction in the very terms of the statute would not avail to give him jurisdiction; the conviction would be bad on the face of the proceedings, all being returned before us. Or, if the charge being really insufficient, he had misstated it in drawing up the proceedings, so that they would appear to be regular, it would be clearly competent to the defendant to show to us by affidavits what the real charge was, and, this appearing to have been insufficient, we should quash the conviction. In both these cases a charge has been presented to the magistrate, over which he had no jurisdiction; he had no right to entertain this question or command an inquiry into the merits; and his proceeding to a conclusion will give him no jurisdiction. But as in this latter case we can not get at the want of jurisdiction but by affidavits, of necessity we must receive them. It will be observed, however, that here we receive them, not to show that the magistrate has come to a wrong conclusion, but that he never ought to have begun the enquiry. But where a charge has been well laid before a magistrate on its face bringing itself within his jurisdiction; but in the course of the inquiry, evidence being affirmed for and against the charge, the proper, or, it may be the irresistable conclusion to be drawn, may be that the offence has not been committed, and the case in one sense is not within the jurisdiction. Now to receive affidavits for the purpose of showing this, is clearly in effect to show that the magistrate's decision was wrong if he affirmed the charge, and not to show that he acted without jurisdiction; for they would admit that in every stage of the inquiry up to the conclusion, he could not but have proceeded, and that if he had

come to a different conclusion his judgment of acquittal would have been a binding judgment, and barred another proceeding for the same offence  Upon principle therefore affidavits can not be recovered under such circumstances. The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its motion ; it is determinable on the commencement not at the conclusion of the inquiry ; and affidavits, to be receivable, must be directed to what appears at the former stage, and not to facts disclosed in the progress of the inquiry." [*Brittain* v. *Kinnaird*, 1 B. & B. 432 (5 E. C. L. R. 137); *Cave* v. *Mountain*, 1 Mand. G. 257, (393 C. L. R. 432).]

The judges in their opinion in the decided cases very generally agree, that wherever the court is one of limited jurisdiction, the record must show on its face, that the court has jurisdiction, or the facts must appear of record, which are necessary to give it jurisdiction, otherwise its judgment will be a nullity. (*Brown* v. *Compton*, 8 T. R. 431; *Davison* v. *Gill*, 1 East. 71 ; *Commissioners* v. *Hearne*, 2 Mass. 102, cited in *Gorrell* v. *Whittier*, in 3 N. H. 268; *Commissioners* v. *Coombs*, 2 Mass. 490.) In *Sharers* v. *Wilson*, 5 Har. & J. 132, Johnson, judge, said : "No principle of law is more evident, than that where the tribunal is of limited jurisdiction, or the proceedings are particularly prescribed by statute made on the subject, the course of procedure so prescribed must, on the face of the record, appear to have been, if not literally at least substantially complied with  or the case must by its proceedings disclose itself to be within the limited jurisdiction." (*Walker* v. *Wynne*, 3 Yerg. 73; *McCullough* v. *Foster*, 4 Yerg. 162; *Walker* v. *Tanner*, 9 Wheat. 548.) In some of the cases the inferior tribunal had jurisdiction generally over the subject-matter but did not have jurisdiction over the particular case, sometimes because some notice was required to be given to confer the jurisdiction, and the necessary notice was not given, or it did not appear from the record, that this necessary notice was given. (*Starr* v. *Scott*, 8 Conn. 483; *Reg* v. *Powell*, L. R. 8 Q. B. 407; Underwood's case, 3 Cow. 59.) But it seems to me if such jurisdictional facts do not appear on the face of the record of a court of special or limited jurisdiction, its judgment will be a nullity, though such juris-

dictional facts did in truth actually exist. Such judgments could not be made valid by proving afterwards, when they were relied on, that such jurisdictional facts existed, though they had not been made to appear on the face of the record. There are decisions which hold the contrary, but not only reason but, it seems to me, the weight of the authorities sustain this position, or at least that these inferences may be justly drawn from many cases. (*Dempster* v. *Purnell*, 3 M. G. 375 ; *The Queen* v. *Bloombury*, 4 Ellis & Bl. 520, 82 E. C. L. Reports 519 ; *Bigelow* v. *Steans*, 19 Johns. 39 ; *Adkins* v. *Brown*, 3 Cowen 206 ; *Bridge* v. *Ford*, 4 Mass. 641 ; *Libby* v. *Main*, 2 Fairfield 344 ; *State* v. *Margrath*, 31 Me. 469 ; *The State* v. *Hartwell*, 35 Me. 129.) On the other hand if the facts, which give the inferior court jurisdiction, are a part of the record, the decisions generally agree that this will prevent the judgment from being a nullity, even though in point of fact these jurisdictional facts had no existence.

Some courts hold, that, while the recital or the record of these jurisdictional facts is necessary to give to the court of limited jurisdiction the right to hear and determine the case, yet these recitals are held to be *prima facie* and are open to contradiction. As this question does not arise in this case, I shall express no opinion, whether if the record of the special term of the county court had shown on its face the proper posting of the proper notice and every jurisdictional fact, it would in all courts and cases be regarded as absolutely true, or whether it would be regarded only as *prima facie* true and open to contradiction by parol proof. The quotation we have made from the opinion of Lord Denman in *Reg.* v. *Bolton*, 1 Ad. & El. N. S. 72 (41 Eng. C. L. R.) would indicate, that in some cases he thought these recitals of jurisdictional facts on the judgment of an inferior court ought to be regarded as absolutely true, and in others only as *prima facie* true and open to contradiction, and it does strike me that there is much force in his reasoning.

The law, as we have stated it above, will, when applied to the record in this case, show clearly, that the judgment rendered by the county court of Tucker county at its special session on January 8, 1885, in this case was rendered, when the court at that session had no jurisdiction to hear and de-

termine the case, and therefore its judgment was a nullity and was properly reversed by the circuit court of Tucker county in its judgment rendered May 14, 1885. It is true, that the record of this special session of the county court of Tucker county does recite, that it was held pursuant to notice as provided for by sec. 6 of ch. 5 of the Acts of 1881. And this section does provide that "A notice of the time of such special session and of the purpose, for which it shall be held, shall be posted by the clerk of said court at the front door of the court-house of the county at least two days before said session is to be held." And we have entered on the record-book of said special session of the county court a recital, which shows that in the judgment of this Court this special session of the county court was regularly called. This amounts to nothing more than a general averment of juris-diction, which, as we have seen, is in such a case insufficient. (*Brown* v. *Keene*, 8 Peters 115.) What was necessary in such case was to set out on the record the jurisdictional facts, in this case the notice, under which this special session was called, in its exact language and the fact, that it had been posted for more than two days prior to the meeting of the court by the clerk at the front-door of the court-house. The fact may be precisely as the county court says it was, that this special session was held January 7, 1885, "pursuant to notice as provided for by sec. 6 of ch. 5 of Acts of 1881," and yet this special session of the court might have had no jurisdic-tion of this case. It may have been called for some entirely different purpose than the trial of this case. In saying this I omit to notice what is copied into the record, headed "Call for special session of the county court," in which one of the objects of this special session is said to be to "try and dispose of the contest for clerk of the circuit court of Tucker county, pending in said county court, between George A. Mayer, contestant, against John J. Adams, contestee." As this paper constitutes no part of the record, and of course we do not know, that it was the paper posted at the front door of the court-house, if any notice was ever posted, there is certainly here a total failure to show by the record that this special session of the county court of Tucker county had any jurisdiction to hear and determine this case. And this

we have seen must appear by the record. It can not be presumed. On the contrary, the record failing to show, that this special term of the county court of Tucker county had any jurisdiction to try this case, it must be presumed that it had no jurisdiction.

It follows that the circuit court upon the appeal to it did not err in reversing and annulling the judgment of the said county court whereby it declared that said George A. Mayer at said election was duly and legally elected to said office and is legally entitled to enter into and perform the duties thereof for said term and that the appellant John J. Adams recover of the appellee Mayer his costs. And the said circuit court likewise committed no error in remanding the said cause to the county court of Tucker for further proceedings without any instructions. For the entire action taken in this case by the county court of Tucker at the special session being illegal and null, the case had not really been finally decided by said county court and the circuit court of Tucker had no authority as an appellate court to decide any of the numerous questions, which had been raised in the case till after the final decision of the case by the county court of Tucker. For the same reason this Court will confine itself to a simple affirmance of the judgment of the circuit court of Tucker rendered on May 14, 1885, and a decree in favor of the appellee, Mayer, against the appellant Adams for his costs in this Court expended and thirty dollars damages.

AFFIRMED.