# CHARLESTON.

Davis v. Pt. Pleasant.

*(Green, Judge, Absent.)

Submitted January 25, 1889.—Decided March 4, 1889.

1. Towns—Corporate Limits—Common-Law Practice.

It is not necessary to the validity of an order made by the Circuit Court under chapter 47, § 49, Code 1887, approving a change of the corporate limits of a town, that the order should show on its face, that the town contains less than 2,000 inhabitants. (p. 293.)

2. Towns—Taxation.

Where a town under said chapter of the Code extends its corporate limits so as to include agricultural or farming lands and imposes municipal taxes on them, though they are not laid off into streets and alleys and not laid out in lots and are not so near streets or alleys as to be directly benefited by them or derive any peculiar benefit from the incorporation, the courts can not affect its action or prevent such taxation. (p. 295.)

*Gunn & Gibbons* and *Tomlinson & Wiley* for appellant.

*Knight & Couch* and *W. A. Quarrier* for appellee.

Brannon, Judge:

On 6th of September, 1886, the Circuit Court of Mason county made the following order: *"Ex parte* Town of Point Pleasant in Mason county. This day came the town of Point Pleasant in Mason county by D. W. Polsley, its attorney, and filed a certificate of the council of said town showing, that a change had been made in the manner required by law in the corporate limits thereof, and that by such change the said corporate limits are as follows: Beginning." * * * "It is therefore ordered, that said change in said corporate limits be and the same is hereby, approved and confirmed; and the clerk of this court is ordered to deliver to the said council a certified copy of this order as soon as practicable after the rising of this court."

---

*On account of illness.

37

In September, 1887, William E. Davis filed a bill in the Circuit Court of Mason county setting forth, that the town of Point Pleasant was incorporated by an act of the General Assembly of Virginia passed 19th December, 1794, with certain given bounds, which remained the same until the order of the Circuit Court above given, and that the plaintiff was owner of a tract of 260 acres of farming land above said town ; that between this farm and the town are the large farm of Charles Waggener and the large farm of Henry J. Fisher; that there was not prior to 6th September, 1886, and was not at the filing of the bill any house or other building on plaintiff's land, nor did any person live on it ; that there were no streets, roads or alleys from said tract of land to said town or elsewhere except the old county road up the Kanawha river and the Clarksburg road, which runs through plaintiff's farm about 100 yards ; that no portion of said tract has ever been laid off or offered for sale as town lots, and there are no streets or alleys through said land, but the same is fenced and used purely as a farm. The bill further stated, that the farms of Fisher and Waggener were practically in the same condition, except that there was a dwelling on each, and the farm of Waggener was occupied by Waggener and family, and the Fisher farm by a tenant, and that neither of them had ever been laid off into lots, streets or alleys, or offered for sale in such divisions; that by the judgment and order of said Circuit Court at the instance of said town on the 6th of September, 1886, the boundaries of said town were extended so as to include the Fisher farm, the Waggener farm, the MacCulloch farm and the farm of the plaintiff, and also a large number of acres of mountain land, some farming land above the old town on the Ohio river, and the banks and bed and running stream of the Ohio river fronting the new and old town boundary, and one half of so much of the Kanawha river as fronts the new and old boundary ; that the present boundary contains —————— acres, capable of containing a city population of 150,000 ; that Point Pleasant had been incorporated in 1794 ; that its population by the last census was 1,036, and in 1870, 773. The bill then alleged, that the object and intent of the authorities of said town in so enlarging its boundaries and in-

cluding farms, mountains and rivers, upon which there were no population or town lots or streets or alleys, was to embrace property and lands formerly outside the corporate limits, so as to tax them for the purpose of improving property inside the town, without rendering any service or benefit to the new subjects of taxation; that the town had never made any effort to acquire streets or alleys over or through the plaintiff's farm, or the Waggener, Fisher, or MacCulloch farms; that said town had levied for the year 1887, a tax of $181.50 on plaintiff's farm and placed the same in the hands of its officer for collection. The bill charged, that the act of the town-council in so enlarging its boundaries for the purpose of taxing said farms, rivers and mountains as town-property was fraudulent and void; also that it was *ultra vires* for the town, even if the extension be lawful, to impose taxes on his land, until it acquired streets and alleys leading from the old town to the plaintiff's farm, and until it acquired streets and alleys through his farm, and worked and repaired the same, and until the blessings and benefits of the town-government should be extended over said lands; and that the order of the Circuit Court enlarging said town limits was null and void.

The prayer of the bill was, that the town be enjoined from collecting any tax on plaintiff's farm, and that the order of the court enlarging the town boundaries be vacated as illegal and void. An injunction was granted.

Plaintiff filed an amended bill, which seems to be unnecessary, as it alleges mere matter of law or argument. It alleges, that the power to create, alter or amend the charter of a municipal corporation is a high prerogative act of sovereignty; that by the constitution of this state the power to do so is vested in the Legislature except charters of towns of less than 2,000 population, in which case the power is vested in the Circuit Court, and, if the town have more than 2,000 inhabitants, the court would have no jurisdiction; and that, to render the judgment and order of the Circuit Court valid, there must be a judicial finding on the face of the order, that the village has less than 2,000 inhabitants, and in its absence the order is on its face void; and charged that this order was void.

After an order of the court overruling a motion to dissolve the injunction the town filed its answer. This answer admitted the facts alleged in the bill, except that it denied "that there was not prior to that date, and is not now, any house or building on said land, nor did nor does any person live upon said land;" and averred that at the date of the order of extension, and for years before, there was one small dwelling in which a family resided on plaintiff's land. It admitted that it was true that there were no streets, roads, or alleys leading from said land to Point Pleasant, or elsewhere, except the county road up Kanawha river, and the Clarksburg road. It denied that no portion of said tract had ever been laid off into town lots, without any specification further than the simple denial. It admitted that plaintiff's land is fenced up and used as farming lands, and that the farms of Waggener and Fisher were practically in the same condition, except that there were some fifteen dwelling-houses on the south portion of the Waggener farm, which portion is laid off into streets, and that more than twenty families occupy the buildings. It averred that a portion of the Waggener farm was sold and laid off into lots, streets, *etc.*, and had been built upon, and was then no part of the farm. . It denied that the object of the extension was to embrace property and lands to tax them to improve property inside the town, without rendering it any benefit, and averred that since the extension the town had expended $2,500.00 in improving a street leading to and through plaintiff's land, known as the 'Clarksburg Road,' mentioned in the bill, and was contracting for improving a street leading up Kanawha river, to and through plaintiff's land. It denied that the town had never made any effort to acquire streets or alleys over or through plaintiff's land, or the Fisher, Waggener, or MacCulloch farms, but that before the suit commissioners had been appointed and had laid off a street through the Fisher and Waggener lands, to intersect the Clarksburg road at or near plaintiff's land, and was only waiting the termination of the suit to open and construct said street. It denied that the act of extension was fraudulent and void, and that it was *ultra vires* to assess taxes until the town acquired streets and alleys leading from the old town to plaintiff's farm. It denied that it had not

pursued the statute, and that the order of extension was void. The answer averred that a large portion of lands taken into the town by the extension had been laid off into streets, and worked and improved, and a goodly number of lots laid off had been sold, and fifteen new buildings erected thereon, and others being erected. The answer states that there were but five or six vacant lots within the old boundary, and those not for sale at any reasonable price; and that the number of inhabitants taken in by the extension was about 600. It denied the legal conclusion of the amended bill that the circuit court order was void."

There was a general replication to this answer. No evidence was taken. The case was heard on the bill, the answer, general replication and a renewed motion to dissolve the injunction; and a decree was pronounced perpetuating the injunction and vacating the order of the Circuit Court enlarging the boundaries of the town; and the town appeals.

By Code c. 47, s. 47, it is provided, that no special act shall be passed incorporating or amending the charter of any town containing a population of less than 2,000. By section 48 it is provided, that any five freeholders desiring to change the limits of such town may petition the council, setting forth the change proposed, and the council shall order a vote as directed in that section, and, when the result of the vote is in favor of the change, the council shall certify the same to the Circuit Court, which shall enter an order in substance as provided in that section, which order must approve and confirm the change and direct a copy of the order to be certified to the council, and from the date of the order the corporate limits of the town shall be as set forth in such order.

The plaintiff contends that, as the council and Circuit Court have no power under the statute to alter the charter or limits of a town except in cases of towns with less population than 2,000, the order of the Circuit Court enlarging the bounds of Point Pleasant is void, because it does not ascertain or declare in any manner, that the population was less than 2,000, that being a jurisdictional fact. The Circuit Court is a court of general jurisdiction, and, when proceeding in the exercise of its ordinary common-law powers, it is

presumed to have jurisdiction of the particular case; and, if the contrary be alleged, it must be proven, (*Mayer* v. *Adams,* 27 W. Va. 251; *Hall* v. *Hall,* 12 W. Va. 1,) and proven by the record, (*Wandling* v. *Straw,* 25 W.Va. 692.) With inferior courts of limited jurisdiction the rule is reversed, and their jurisdiction must appear affirmatively; and in the language of Judge GREEN, in *Mayer* v. *Adams, supra*: " Even though a court be a superior court of general jurisdiction, still, when the particular proceedings are not according to the course of common law, but under a statute given a summary remedy, the record on its face should show generally that the particular case comes within the statute, and that the statute has been followed." See *Harvey* v. *Tyler,* 2 Wall. 342; *Thatcher* v. *Powell,* 6 Wheat. 119; 7 Rob. Pr. 16; *Pulaski Co.* v. *Stuart,* 28 Gratt. 872.

We do not deny these principles in proper cases, but do not think them applicable here. The town-council under the statute exercised the first and most important function in the proceeding. Before entertaining the petition and ordering a vote on the question of change of boundary it should have been satisfied, that the town contained a population of less than 2,000. It must be taken, that it did satisfy itself, that such was the fact. The act requires the result of the vote to be certified to the Circuit Court; and without requiring the court to make any inquiry, give any notice or citation or take any further steps in the matter, it declares, that said court "shall thereupon enter an order in substance as follows: A certificate of the council of the city ( or town or village, as the case may be) of——— was this day filed, showing that a change has been made, in the manner required by law, in the corporate limits thereof, and that by such change the corporate limits thereof are as follows: Beginning, *etc.* It is therefore ordered that said change in said corporate limits be, and the same is hereby, approved and confirmed, and the clerk of this court is directed to deliver to the said council a certified copy of this order as soon as practicable after the rising of this court." The court is required to enter that order. Nothing further is required of it by the statute. It has but to see, that the certificate from the council is such, as the statute requires to enable it to em-

body in its order the matter required by the statutory form. The specification by the statute of a particular order embodying particular matter makes such order all-sufficient and dispenses with the necessity that the order should show on its face the population of the town, even if otherwise the court would be required in its order to show such fact. The action of the Circuit Court is purely ministerial and in a line specified by the statute and *ex parte.*

Has the town the right to tax this farm? Where the corporate limits include rural or agricultural lands, never divided into town-lots, not needed or capable of use for town-lots, and receiving no direct benefits from the municipal government or expenditures, questions have arisen in the courts as to the right to subject such lands to ordinary municipal taxation. The power to fix or enlarge the corporate limits is not disputed; but the power to require such lands to contribute to the municipal treasury has been controverted. In Kentucky the principle has been adopted, that the "courts will in such cases control and limit the taxing power to that point or line, where it ceases to operate beneficially to the proprietor in a municipal point of view." The general rule there is, that the right to tax for real municipal purposes extends only to such land as has been surveyed and divided into lots, but the right to tax may under circumstances extend to property, which has never been surveyed and divided into lots. *Cheaney* v. *Hooser*, 9 B. Mon. 330; *Sharp* v. *Donavan*, 17 B. Mon. 177; *Covington* v. *Southgate*, 15 B. Mon. 491. 2 Dill. Mun. Corp. § 794. Iowa has followed the Kentucky rule in several cases. *Morford* v. *Unger*, 8 Ia. 82; *Butler* v. *Muscatine*, 11 Ia. 433. These cases proceed on the theory, that no benefit accrues to the owner of the land from the corporation; but, as Justice MILLER says in *Kelly* v. *Pittsburgh*, 104 U. S. 78, of the owner of the farm, it may be true, he does not receive the same amount of benefit from some or any of these taxes as some living in the heart of the city. It is probably true, that his tax bears an unjust relation to the benefits received. But who can adjust with precise accuracy the amount, which each individual in an organized civil community shall contribute to sustain it or insure absolute equality of burdens and fairness in their distribution?

We can not say judicially, that Kelly received no benefit from the city organization. These streets, if they do not penetrate his farm, lead to it. The schools may receive his children.

But it is plain that the Kentucky and Iowa rule is, as Judge DILLON in Municipal Corporations, § 594, and Judge COOLEY in Constitutional Limitations, 501, remark, arbitrary, and the obstacles in the way of the practical application are almost insurmountable. Each case would turn on its own facts and be a rule only unto itself. There is no fixedness of principle in it. It would be productive of endless litigation. It would run counter to Code 1887, c. 47, s. 31, that the tax-levy shall be "on all real and personal estate therein (in the town) subject to state and county taxes," leaving it to the courts to exempt some property, while other property is taxable. The rule has been repudiated in Mississippi, *Martin* v. *Dix*, 52 Miss. 53; also in Maryland, *Groff* v. *City*, 44 Md. 67; also by United States Supreme Court in *Kelly* v. *Pittsburgh*, 104 U. S. 78; also in Nebraska, *Turner* v. *Althaus*, 6 Neb. 54. I think it contrary to the principle of *Powell* v. *City of Parkersburg*, 28 W. Va. 698. Though in that case this particular question and the conflicting authorities upon it were not discussed, yet it was an effort to release from city-taxes three acres of land used for agricultural purposes, not laid off into streets and alleys and lots, or in any manner connected with city-property, and the court held the broad principle, that the city could under Code, c. 47, levy taxes upon all real and personal property within its corporate limits

It seems, that under this extension Point Pleasant has an area of 1,228 acres. It seems hard, that the plaintiff's farm separated from the town proper by two other large farms and not likely to derive any benefit from inclusion within it should pay municipal taxes. Apparently objectionable in some instances as is this practice of extending corporate limits over large areas of agricultural lands for no other purpose than to gather taxes, yet the courts are powerless to afford relief. It is the voice and power of the people applied under authority granted them by the Legislature; and the only relief must come from better legislation on the subject

The legislature has delegated to the town-council and people this function. It is done virtually by the Legislature.

The appellant insists that the sole object of the extension was the imposition of taxes, which he denominates "fraud," and asks relief under that head. But fraud can not be imputed to the Legislature in the passage of an act, so as to overthrow it. Cooley, Const. Lim. 187, and note 1. Neither can a court impute fraud and corrupt intent to council and people in acting under color of law. 1 Dill. Mun. Corp. § 311. For reasons stated in the opinion in *Powell* v. *Parkersburg*, supra, I think equity had jurisdiction in this case.

. The decree of the Circuit Court must be reversed, the injunction dissolved, and the bill dismissed with costs to defendant in both courts.

REVERSED. DISMISSED.