# CHARLESTON.

## TOMBLIN v. PECK.

Submitted November 19, 1913.  Decided December 2, 1913.

1. INFANTS—*Action—Misnomer—Technical Errors.*
    In the exercise of the right of an infant to show cause against a decree under which his land has been sold, he cannot set aside a sale fairly made to satisfy valid indebtedness for a mere technical error in procedure.  (p. 338).

2. SAME—*Action—Misnomer—Jurisdiction.*
    If, in a suit to sell the real estate of a decedent for the satisfaction of indebtedness against it, the three infant heirs were all made parties to the bill, two by their proper names and the third by a wrong name, and a guardian ad litem duly appointed filed answers for them, the mistake as to the name is a mere misnomer, correctible by amendment, and the party so erroneously named is deemed to have been brought within the jurisdiction of the court.  (p. 338).

3. EXECUTORS AND ADMINISTRATORS—*Administrators De Facto.*
    An infant improperly appointed administratrix of an estate is nevertheless an administratrix *de facto* and her acts as such are valid and binding, and the appointment cannot be collaterally assailed. (p. 339).

Appeal from Circuit Court, Logan County.

Bill by Mary Tomblin, an infant, against J. E. Peck, Sr., and others.  From decree for plaintiff, the defendant named appeals.

*Reversed, and Bill Dismissed.*

*F. C. Leftwich,* and *J. E. Peck, Jr.,* for appellant.

*Chafin & Bland* and *J. S. Miller,* for appellee.

POFFENBARGER, PRESIDENT:

This suit for partition of three tracts of land containing in the aggregate about 700 acres, by an infant suing by her next friend, involves and grows out of proceedings in two former suits, and proceeds upon the theory of lack of jurisdiction in the court. to pronounce certain decrees in the last one of the two prior causes.  It is the exercise of the right of the plaintiff, as an infant, to show cause against the decree in that suit.  Treating the decrees therein as void, the circuit court granted the relief prayed for in the bill, and the purchas-

er of the land at a judicial sale in the last of said former suits has appealed.

The land was sold as the property of G. A. Farley, at the instance of creditors in a suit commenced May 19, 1888, and J. E. Peck became the purchaser, paid the purchase money and obtained the right to a deed for the land which was never executed. Afterwards, on June 29, 1891, Farley, the former owner and debtor, repurchased from Peck part or all of the land for $1,350.00, of which $500.00 was paid and for the residue of which he executed his three notes, and took from Peck a title bond. .In the next year, Farley died without having paid the balance of the purchase money, and left surviving him his wife, Alice Farley, and three children, William, Flora and Mary. Then on January 6, 1893, Peck instituted a chancery suit to compel specific performance of the contract, evidenced by the title bond and purchase money notes, making Alice Farley, the administratrix of the estate of G. A. Farley, Alice Farley, his widow, in her own right, Flora Farley, William Farley and Alice Farley, parties to the bill, describing the last three as infants. One of these infants was improperly named. She was proceeded against as Alice Farley and her name was Mary Farley. A guardian ad litem was appointed for the infants and filed an answer for them. There was a decree of sale and Peck again became the purchaser for $850.00. The sale was confirmed, the purchase money applied on the costs and debt and a commissioner was directed to execute a deed, but never executed it.

The bill proceeds upon the assumption that the plaintiff was not a party to the suit instituted by Peck and that her half-sister, Annie Farley, was also omitted, in consequence whereof certain interests in the land, her own and her half-sister's, were not within jurisdiction of the court nor sold. The bill alleges the half-sister, Annie Farley, died sometime after Peck became the purchaser and the plaintiff and her brother and sister inherited her part of the land, so that at the time of the institution of this suit Peck was the equitable owner of one-half of the land and the plaintiff and her brother and sister held the legal title to all of it and the equitable title to the other one-half. The bill exhibited the proceedings in the prior suit instituted by Peck. It was answered by him and

also by William Farley and Flora Dingess (nee Farley), the brother and sister of the plaintiff, who united in the prayer for partition. There was a reference to a commissioner who ascertained and reported that Peck had resold to G. A. Farley only the surface of the land for the sum of $1,400.00, $500.00 of which he paid in cash, and that there was due him, after deducting $5.00 for rent and $204.00 for timber, $1,752.00. This report was excepted to by the plaintiff and Flora Dingess and William Farley, because the commissioner failed to charge Peck with interest on the value of the timber taken from the land and because the commissioner found Peck was the equitable owner of the mineral in the land and had resold to Farley only the surface thereof. The court sustained the second exception, corrected the report and entered a decree in favor of Peck for the sum of $1,752.00, with an order for sale of the land in case of default in the payment of said sum within thirty days.

As the bill alleges failure to make Annie Farley, one of the heirs, a party to the suit, and her subsequent death, in consequence of which the plaintiff and her brother and sister inherited her interest in the land, the demurrer to the bill was properly overruled. But for this allegation, it may be possible the demurrer could have been properly sustained, inasmuch as the record exhibited with the bill might be sufficient to show the plaintiff herself had been made a party by a wrong name.

In fact, Annie Farley died before the death of her father, and all of the interested parties were before the court in the suit brought by Peck, but one of them was there by a wrong name. There were but three children and three were made parties as infant defendants. The process was personally served upon all of them and a guardian ad litem put in their answers. Obviously, therefore, there was a mere misnomer as to Mary Farley, the plaintiff in this suit. Failure to discover this and correct it by an amendment was a technical error, but there was no want of jurisdiction. Although sued by a wrong name, she was before the court and an answer was put in for her by her guardian ad litem. *Chapman* v. *Branch*, recently decided and not yet reported. A technical error, such as this, however, does not justify the setting aside of the

sale under the decree in the cause in which it was committed. The indebtedness for which the land was sold is established beyond the shadow of a doubt and it is neither denied nor questioned by the plaintiff in the bill in this cause. Moreover, it was a purchase money debt expressly charged upon the land, the vendor holding notes for it and withholding a deed of conveyance. So far as this record shows, there was no possible defense to make in that suit, nor is anything shown against the fairness of the sale therein. No inquiry arose as to whether a sale would promote the interest of the infants, for it was a sale to satisfy indebtedness. It was not a discretionary sale but an inevitable, involuntary one. Under the right accorded him by the statute to show cause against a decree, an infant cannot set aside a sale fairly and justly made for a mere technical error in procedure. He must show good reason why the sale should not have been made. *Pierce's Admr.* v. *Trigg's heirs,* 10 Leigh 406, 431. In that case, certain real estate was treated and sold as partnership assets, without any proof of the fact and possibly without allegation thereof. Of course it was error to do so and the infant relied upon it in a proceeding to set aside the sale. It was in fact partnership property and the court refused to set aside the sale because of the technical error. The land was erroneously sold subject to supposed rights of dower, but the court refused to set aside the sale on that ground.

As matter of further impeachment of the decree of sale, it is alleged that Alice Farley, the widow of G. A. Farley, was an infant at the date of her appointment as administratrix and therefore ineligible at the date of her appointment and that she was under the disability of infancy at the time of the institution of the suit, January 6, 1893. The only proof offered is the record upon which her marriage license was issued, showing she was 16 years old in 1888. She must have become 21 sometime in the year 1893, but whether before or after the 6th day of January of that year, the date of the institution of the suit, it is impossible to say from the evidence. Though an infant is ineligible to appointment as a personal representative and cannot be empowered to enter into contracts as personal representative or otherwise, by an unauthorized appointment, the appointment itself cannot be collaterally

assailed or treated as void. Thus, where one person has the right of administration and another has been appointed, by a court of competent jurisdiction, the person so appointed is the lawful representative of the personal estate until his appointment has been rescinded. *Royall* v. *Eppes,* 2 Munf. 479. And a person appointed administrator in a county in which the intestate left no estate, wherefore the appointment was improper and unauthorized, it cannot be collaterally assailed. *Fisher* v. *Bassett et al,* 9 Leigh 119. Of course an appointment made by a court having no authority to appoint an administrator or executor in any case or under any circumstances is absolutely void. But, when the appointment has been made by a court having jurisdiction and power to make such appointments in proper cases, and the propriety of the appointment depends upon facts to be ascertained by such court, its action is conclusively presumed to have been proper in all collateral proceedings. In other words, the appointee is administrator or executor, as the case may be, *de facto,* and all his acts are valid until the appointment has been rescinded or abrogated in some way. Under the present constitution of this state, as amended in 1880, the powers and jurisdiction of county courts are not so extensive as were those of such courts in Virginia and in this state under the constitution of 1872. *Fowler* v. *Thompson,* 22 W. Va., 106; *Mayer* v. *Adams,* 27 W. Va. 244; *Arkle* v. *Board,* 41 W. Va. 471. It is said they no longer have any judicial power. Nevertheless, whether the function be executive, administrative or legislative, they have general power and jurisdiction to appoint administrators, executors, guardians, curators and committees and admit wills to probate. This involves a judicial function. Though they are courts of limited jurisdiction, they are nevertheless courts of record and their acts in the exercise of the jurisdiction they have are entitled to the same presumptions of regularity as are invoked and applied in support of the acts of courts of general jurisdiction. *Wells* v. *Simmons,* 61 W. Va. 105. *Mayer* v. *Adams,* cited, marks the distinction between county courts in regular session and county courts in special session, saying: ''For county courts in this state at their special sessions are not courts of general jurisdiction, but are inferior courts of very limited jurisdiction.'' This is

because the statute limits them to the transaction, at a special term, of such business only as is specified in the warrant or notice calling the term. It is not essential to general jurisdiction in a court that it have power to hear and determine all manner of causes, for no court has that. If it has complete, full and unlimited authority over certain kinds and classes of causes or matters, either exclusive or concurrent with other courts, and is a court of record, it is certainly a court of general jurisdiction as to the matters so fully and completely committed to its powers by the law of its constitution and ordination.

An infant administrator cannot be held liable for a devastavit committed by him, nor be required to account, while under the disability of infancy. *Saum* v. *Coffelt,* 79 Va. 510; *Allen* v. *Minor,* 2 Call. 70; *Hindmarsh* v. *Southgate,* 3 Russell 324; Tyler on Inf. & Cov., sec. 7 p. 41. This results from the incapacity of an infant to bind himself by contract except in particular cases, and his unauthorized appointment is not deemed to have enlarged his contractual powers. But it does not follow that all of his acts are void. He is nevertheless a *de facto* administrator and many of his acts are valid and binding. *Railway Co.* v. *McWhorter,* 59 Kan. 345; *Davis* v. *Miller,* 106 Ala. 154; *Succession of Lyne,* 12 La. An. 155; *State ex rel* v. *Rucker,* 59 Mo. 17; *State* v. *Smith,* 71 Mo. 75. In all these cases, it was held that a minor improperly appointed administrator may sue and the appointment is not open to collateral attack. In other words, the appointment is deemed valid for the purposes of the action. The incapacity of the infant to contract is not involved here. The purpose of making her a party defendant to the bill in the suit instituted by Peck was to enable her to show the indebtedness had been paid or to apply upon it any personal estate in her hands as administratrix. The creditor in that suit was not bound to require an accounting of her and, if she had misappropriated or wasted the personal assets and could not be made to account for them, that fact did not bar the right of Peck to resort to the land for payment of the purchase money due him, and, as she was administratrix in point of fact, he could treat her as such for the purposes of his suit.

It results from these principles and conclusions that the

plaintiff's bill was without equity and should have been dismissed. She was entitled to no relief whatever. The land had been fairly sold and purchased by Peck and the purchase money properly applied. The technical error in the misnomer of the plaintiff as one of the heirs does not justify the setting aside of the sale, and, as the court should have dismissed the bill, there was no occasion for any reference of the cause to a commissioner for inquiry as to whether the land resold to Farley was the surface only or both surface and mineral. Whatever it was, Peck regained the equitable title by his purchase.

The legal title seems to be outstanding in the heirs of Farley, but Peck has not asked any affirmative relief in his answer. He does not pray for a decree requiring them to convey the legal title to him, nor are all the parties necessary to such relief before the court. The husband of Flora Dingess was not made a party nor was the wife of William Farley. The omission of the latter may not be important, but Flora Dingess cannot execute a deed alone. Her husband must join in it.

For the reasons stated, the decree complained of will be reversed and the bill dismissed.

*Reversed, and Bill Dismissed.*