# CHARLESTON

## MANN *et al. v.* COUNTY COURT.

58  651
f62  510

Submitted November 9, 1905.     Decided January 16, 1906.

1. COUNTY COURTS—*Calling Election—Duties.*
   The duties imposed upon county courts, by section 15 of chapter 39 of the Code of 1899, as amended by chapter 95 of the Acts of 1901, are ministerial. (p. 654.)

2. COUNTY COURTS—*Time for Proceeding—Adjournment.*
   Such courts cannot prevent action upon a petition filed under said statute, at the term at which it is filed, by adjourning the term. (p. 654.)

3. COUNTY COURTS—*Personal Knowledge—Basis of Action.*
   Such courts must base their action on the record made in the proceeding, and not upon personal knowledge of their own members, not in any way made part of such record. (p. 655.)

4. COUNTY COURTS—*Personal Knowledge—Mandamus.*
   Knowledge and belief of the members of such court, to the effect that the petition so filed is not signed by the requisite number of legal voters, constitutes no defense upon an application for a *mandamus* to compel action thereon, when the petition bears the requisite number of signatures and is verified as the statute pro-

vides, and no other evidence bearing on the question appears in the record of the proceeding as it remains in said court. (p. 655.)

5. EQUITY---*Jurisdiction---Supervision of Governmental Acts.*

In the absence of a statute conferring it, courts of equity have no power to control, by injunction or otherwise, public officers and tribunals in the exercise of purely legislative or governmental functions. (p. 655.)

6. SAME---*Fraud.*

Fraud, perpetuated by private persons, in the procurement of the exercise of a legislative or governmental power of itself, affords no ground of equity jurisdiction, unless it is expressly given by statute. (p. 656.)

7. COURTS---*Adjournment.*

Section 2 of chapter 114 of the Code of 1899, authorizing circuit and county courts to adjourn from day to day until their business is dispatched, or until the ends of their terms, does not limit or restrict the common law powers of such courts to adjourn to a distant day, or, as it is sometimes expressed, from time to time, provided the day fixed be not beyond the time to which the term could legally continue. (p. 657.)

8. SAME.

Section 10 of chapter 114 of the Code of 1899, does not limit the period of time over which a circuit or county court may adjourn. Its purpose is to prevent the loss of a term by reason of the failure of any court to sit on any day appointed by law, or by its own adjourning order, for that purpose. (p. 658.)

9. MANDAMUS---*Official Action.*

A court or other tribunal, charged with the performance of a mandatory duty at a given term or session, which adjourns without having performed such duty, may be re-convened and compelled to perform such duty, by *mandamus,* and the act, when so done, will be deemed to have been performed at the term or session at which the law required it to be done. (p. 661.)

*Mandamus,* on petition of Edwin Mann and others, against the county court of Mercer county, and others.

*Writ Awarded.*

BROWN, JACKSON & KNIGHT and MOLLOHAN, McCLINTIC & MATHEWS, for petitioners.

C. W. SMITH, J. H. HOLT and J. W. KENNEDY, for respondents.

POFFENBARGER, JUDGE:

On the 31st day of October, 1905, this Court, upon the petition of Edwin Mann and 1939 other citizens and legal

voters of Mercer county, awarded a *mandamus nisi*, directed
to the county court of said county and the commissioners
thereof, commanding said commissioners to re-convene as
such county court and make and enter an order calling a spe-
cial election for the determination of the question, whether
the county seat of said county shall be removed, from the
town of Princeton therein, to the city of Bluefield in said
county and be re-located at said city, in accordance with
the prayer of the petition of said Mann and others which had
theretofore been presented to said county court.

Said petitioners, on the 30th day of September, 1905,
presented to the county court their said petition for the
calling of said election, properly verified by affidavit, and
accompanied by a bond of five thousand dollars as required
by the statute, and the court permitted the petition and
bond to be filed, and made and entered an order directing
said election to be held on the 12th day of December, 1905,
and then adjourned to the following Tuesday, the third day
of October, 1905. Upon re-convening on that day, it set
aside said order, upon the motion of James Scott and others,
and thereupon the petitioners again presented the petition and
bond to the court and asked that they be filed and an order
made, providing for the holding of such election, but the
court refused so to do.

The action of the court, in setting aside said order and re-
fusing to re-enter the same, was based upon the theory that,
at the time of its entry, as well as at the time of the appli-
cation for a re-entry thereof, the court was not legally in
session. It had convened in regular session on Wednesday
following the second Tuesday in September, 1905, and ad-
journed from day to day and from time to time until said
30th day of September. Some of these adjournments were
for longer periods than three days. One of them was from
the 21st day of September until the 26th. On said
last named day an adjournment was taken until the 30th
day of September.

The principal defenses, set up in the return to the writ,
were the following: *First.* The petition presented to the
county court did not contain the signatures of a sufficient
number of legal voters. *Second.* An injunction had been
awarded by the circuit court of said county inhibiting and re-

straining the said petitioners from moving for, and said county court and the commissioners thereof from ordering, an election upon the petition of said Mann and others, until the further order of the said circuit court. *Third.* At the time of the presentation of said petition to the county court of said county, the regular term thereof at which said petition could have been filed had ceased and ended by operation of law, by reason of the adjournments which had occurred. *Fourth.* If said term had not so ended, there had been a final adjournment thereof on the 3rd day of October, 1905, wherefore it could not be re-convened for the transaction of business which it was its duty to perform at that time.

The proceeding for obtaining the calling of an election for the re-location of a county seat is special and statutory, and the duty of the county court as to it, purely ministerial. *Doolittle* v. *County Court,* 28 W. Va. 158. Section 15 of chapter 39 of the Code, as amended by chapter 95 of the Acts of 1901, prescribes minutely, the duty of the county court respecting the same. The petition shall be signed by two-fifths of all the legal voters of the county, to be estimated by allowing one vote for every six persons in the county as shown by the last preceding census, and an affidavit shall be appended thereto that the petitioners are, as affiant verily believes, legal voters of said county. At the same term at which such petition is filed, the court shall make an order that the vote be taken at the next general election to be held in said county upon the question of such re-location at the place named in the petition, if a general election is to be held in that year, and, if none is to be so held, the court shall, at the same session at which the petition is filed, fix a day for, and order the holding of, a special election upon the question of such re-location. A petition, containing the requisite number of names, and so verified by affidavit, makes a *prima facie* case, and, if it is not in any way contested, nor the *prima facie* case thus made overthrown, the court must act upon it as it is. The affidavit is the only proof required and the court cannot ignore the petition and refuse to act, merely because members of it are of opinion that some of the persons whose names appear therein are not legal voters. That the requisite number of names was

subscribed to the petition is not denied. The only fact controverted by the answer is that a sufficient number of the petitioners are legal voters. That was a matter to be determined by the county court according to the record as it was in that court at the time it was called upon to act, and, as the record then stood, it was bound to find and determine that the petition was sufficient, because · there was no evidence that any person, whose name appeared in the petition, was not a legal voter. In order to sustain the position taken in this Court, it would be necessary for the record, as it remains in the county court, to show that enough of the names subscribed to the petition, to reduce the entire number below the requisite two-fifths, were names of persons who were not legal voters. There should be, at least, some evidence tending to rebut the *prima facie* case made by the petition. Acting upon mere personal knowledge or belief of its own members, not in any way put into the record of the proceeding so as to permit the correctness thereof to be inquired into, the court could not refuse to order the election. The return fails not only to show anything in the record, indicating insufficiency of the petition, in the respect above mentioned, but also that anybody proposes to test its sufficiency by any attack upon it. What the action of this Court might be, if it appeared that, upon the re-convening of the county court, counter-affidavits and other evidence would be adduced showing such defect in the petition, we are not called upon to say. No such showing is made.

The function performed by a county court in ordering an election under the statute hereinbefore referred to, is legislative or governmental in its nature. It neither concerns nor affects any private right in the legal sense of the terms. Injunction is not a remedy which may be invoked by the citizen for the purpose of controlling public officers or tribunals in the exercise of their functions and powers. In order to sustain it, the plaintiff must show that he has a special interest in respect to which he will suffer a special injury of a private nature. It is not enough that the community in which he resided will be injuriously affected by some governmental or legislative action. Injunction is not within his reach until in some way his private personal or property rights are invaded. "Courts of equity have no jurisdiction,

independent of statute, to enjoin at the suit of citizens the proceedings of county officers because of the illegality of the act creating such county, when no question of private right is involved." High on Inj. 4 Ed. section 1249. "A court of equity has no jurisdiction to interfere in disputes concern-municipal elections, and when a court has assumed jurisdiction in such a case and has enjoined a board of municipal officers, such as the common council of a city, from canvassing the returns of a municipal election, which is made their duty by law, such injunction will be regarded as absolutely void for want of jurisdiction over the subject-matter." *Id.* section 1250. "Equity will not interfere to prevent the enforcement of a city ordinance simply on the ground of its illegality, nor will it assume jurisdiction to question the lawful election of officers, or the validity of the ordinance *per se*, for the purpose of protecting citizens from an uncertain and remote injury. *Id.* section 1243. These general principles have been asserted by this Court in *Morgan* v. *County Court*, 53 W. Va. 372. See also Spelling on Inj. section 630; 10 Am. & Eng. Ency. Law 817; *Fleming* v. *Guthrie*, 32 W. Va. 1. Courts cannot interfere by appeal, injunction, or otherwise, with the exercise of governmental powers and functions, when the statute does not expressly authorize such interference. *County Court* v. *Boreman,* 34 W. Va. 87; *County Court* v. *Armstrong*, 34 W. Va. 326. The legislature, in prescribing the mode of calling and holding elections for the re-location of county seats, has failed to provide any mode of reviewing or controlling the officers or tribunals charged with duties in respect thereto. If courts of equity should interfere on the ground of a want of remedy, the very object which the legislature sought to avoid might thereby be accomplished, namely, the filling of the courts with controversies of a political nature, matter entirely foreign to the ordinary jurisdiction of equity. No doubt, the citizen has the right to appear before the county court and remonstrate and point out insufficiencies and defects in the petition and contest the truth of its allegations, but it does not follow that he may appeal from the action of the court, or have a power of control over it by means of an injunction from a court of equity. The legislature has seen fit to vest in the county courts power to call such elections, without pro-

viding any special mode of review of their action. Who shall say the legislature could not do this? What authority or reason in law is there for saying it may not give county courts power to order such elections, whenever, in the opinion of the court, it shall seem expedient to do so? Undoubtedly it could do so. Having full and unrestricted power over the subject, it could have made the affidavit appended to the petition conclusive evidence of the truth of the facts stated in it. So also, relying upon the ability and integrity of the county courts of the state, it could make their action upon the petition final, and was not bound to provide any mode of review or control. Whether it has done so, we do not determine, further than to say there is no special provision of that kind, and courts of equity have no such power under general law. Fraud is a ground of equity jurisdiction, but only when it works injury of a private nature. Why should there be any elaborate system of laws for the mere calling of an election? It only gives the people a chance to vote on the question. Of itself, it effects nothing. Our statute safe-guards the taxpayers by making the petitioners pay the expenses of the election. In view of the principles above stated, and the nature of the act in question, we think the circuit court had no jurisdiction, and that its injunction is void.

The contention, that the court was not in session at the times at which the petition was presented, is founded upon sections 2 and 10 of chapter 114 of the Code of 1899. Said section 2 reads as follows: "The supreme court of appeals and circuit and county courts may at any time adjourn from day to day until the business is dispatched, or until the end of its term." Said section 10 provides that "Although a court be not held on the first day of a term, it may nevertheless be opened on any subsequent day: *Provided*, In the case of a circuit or county court, the same shall be done before four o'clock in the afternoon of the third day. If; after a court is opened, it fail to sit on any day, it may nevertheless sit on any subsequent day of the term: *Provided*, In the case of a circuit or county court there be not more than three consecutive days of such failure. "

That the two sections have different purposes is perfectly apparent. The object of section 10 is to prevent the loss of

a term of court, and discontinuance of pending cases, when, for any reason, the court fails to open on the day fixed for the beginning thereof, or on any day to which a term, after it had been opened, may have been adjourned. It does not purport to fix the time to which an adjournment may be made by any court, or place any limitation thereon. It merely continues the term. by force of law, when the court has failed to commence business at the time appointed by law, or by its own adjourning order, for that purpose. Making no mention of, or reference to, adjournments, but, ignoring the fiction by which the whole term is, for some purposes, considered a day, and assuming that the power of adjournment, possessed by all courts, will be exercised, it makes provision for failure to sit on the day to which a court may adjourn. As to when a court may adjourn, and for what period of time, it is absolutely silent.

It only remains, therefore, to determine the effect of section 2. By the common law, a court has the inherent power to adjourn its session, not only from one day until the next, but to a distant day, or, as it is sometimes expressed, from time to time. *Mechanic's Bank* v. *Withers*, 6 Wheat. 106; *In Re Hunter*, 84 Ia. 388; *Sterling* v. *Wagner*, 31 Pac. Rep. 1032. The case last cited carefully reviews a large number of decisions of different states of the Union and clearly shows that, by the great weight of authority, a court may so adjourn, unless the power to do so is restrained or limited by statute. Although our statute says adjournments may be from day to day, it does not necessarily follow that it means to limit the power of the court to an adjournment from one day until the next. Many statutes are simply declaratory of the common law. They are made for the purpose of avoiding all doubts and difficulties as to what the common law is and has been. Suth. Stat. Constr. section 329; Dwar. on Statutes, sections 475, 477. This gives the statute effect under the rule that the courts, in construing statutes, must make them effect some purpose, for the legislature is deemed to have had some reason for passing every statute. "A statute made in the affirmative, without any negative expressed or implied, does not take away the common law." Suth. Stat. Constr. section 329. No negative word or phrase appears in section 2. There is a presumption also that the legislature

does not intend to make any innovation upon the common law
further than the necessity of the case requires, wherefore
the courts will not, by construction, extend the effect of
the language used beyond its natural meaning. Suth. Stat.
Constr. section 454. This rule probably does not apply to
merely remedial statutes or those relating to public policy,
and may not, therefore, be applicable to this case. By the
application of these rules it is difficult to reach a satisfactory
conclusion as to what the legislature intended. Under such
circumstances, it is highly proper to resort to the well settled,
and very wholesome, rule of contemporaneous construction.
It is a fact known to the court, by the experience and obser-
vation of its members, during their practice at the bar, their
general knowledge of the proceedings of the circuit and
county courts of the State, and information imparted by
members of the legal profession, that said courts have al-
most, if not quite, uniformly, interpreted and construed this
statute as allowing adjournments from time to time as well as
from day to day. Such has been the practice here since
the formation of the State and, probably was, under the same
statute, by the courts of Virginia prior to the organization
of the State. Some of them cautiously avoid adjourning for
more than three days, but, in most instances, no such limit
is observed. If section 2 inhibits an adjournment for more
than one day, no authority for a longer adjournment exists.
Section 10 does not confer it, and an adjournment for three
days would be as unwarranted as one for ten days. The only
difference would be in this, that a failure, for three days or
less, to sit would not destroy the term, while such failure for
ten days would do so. During all this time the legislature
has acquiesced in this construction of the statute. In some
of the recent legislation of the State, adjournments by the
circuit courts from time to time have been expressly author-
ized. Code of 1899, chapter 112, section 5, relating to spe-
cial terms. Such acquiescence on the part of the legislature
gives rise to the presumption that this construction of the
statute is in conformity with its intent. "A contemporaneous
construction is that which it (a statute) receives soon after
its enactment. This after the lapse of time, without change
of that construction by legislation or judicial decision, has
been declared to be generally the best construction. It gives

the sense of the community as to the terms made use of by the legislature. If there is ambiguity in the language, the understanding of the application of it when the statute first goes into operation, sanctioned by long acquiescence on the part of the legislature and judicial tribunals, is the strongest evidence that it has been rightly explained in practice. A construction under such circumstances becomes established law." Suth. Stat. Constr. section 472, citing numerous cases, including *Hahn* v. *United States,* 107 U. S. 402; *Cohens* v. *Virginia,* 6 Wheat. 264; *Pennoyer* v. *McConnaughey,* 140 U. S. 1; and *Hamilton* v. *McNeal,* 13 Grat. 394. "The construction, given to a statute by those charged with the duty of executing it, ought not to be overruled without cogent reasons." *Daniels* v. *Simms,* 49 W. Va. 554; *Morris* v. *Wertz,* 49 W. Va. 251, 258; *United States* v. *Moore,* 95 U. S. 760; *Brown* v. *United States,* 113 U. S. 568. Great evil would result from a judicial repudiation of this construction, for it would invalidate numerous judgments, decrees and orders of the various courts of the State. This is a consideration not lightly to be passed over in reaching a conclusion as to the meaning of the doubtful language found in the statute. No adjudication by this Court or by the Virginia court sustains the view taken by counsel for the respondents, nor does any reported decision expressly enunciate the proposition here asserted; but, under substantially the same statute, one authorizing adjournment from day to day, the Supreme Court of Virginia, in *Langhorn* v. *Waller's Ex'ors,* 76 Va. 213, virtually holds that an adjournment may be taken to a distant day. The court had adjourned from the 20th to the 23rd of December, but did not sit on the 23rd, nor until the 26th, and it was held that a judgment rendered by it before four o'clock on the 26th of December was valid. In the opinion, it is said the power of the circuit court to adjourn from the 20th to the 23rd was not questioned and the appellate court expressly decided that such an adjournment could properly be made. The language in section 4 of chapter 114, and section 13 of chapter 13, lends countenance to the view that an adjournment can be for but one day, but it is all clearly reconcilable with the other construction. A provision in a notice to take depositions for continuing the taking thereof from day to day has been

held not to authorize an adjournment to a distant day. *Buddicum* v. *Kirk*, 3 Cranch. 293; *Raymond* v. *Williams*, 21 Ind. 241; *Harding* v. *Merrick et al*, 3 Ala. 60.   But the taking of depositions differs from the holding of a court, and, moreover, the opinions in the cases just cited are unsatisfactory, because they set forth no reason for the conclusions stated.

The reported decisions of this Court disclose no instance of hardship, surprise or other cause of injury or complaint, arising out of the operation of the statute, so construed. How could it occur?   Every cause must be matured and placed on the docket of a circuit court before the first day of a term thereof, else it cannot be heard at that term, unless it be some special proceeding.   If it is on the docket, and the parties want to be heard, they must attend on the day set for the hearing, and remain until some disposition of the case is made.  If an adjournment over one or more days occurs, the record shows it and affords notice.   The business of county courts, affecting private interests, is now, for the most part, *ex parte* in character, and the requirement of notice does not enter extensively into its transactions.   If the legislature did intend to prevent an adjournment to a distant day, in the interest of economy in the public expenditures, or for any other reason of public policy, the statute would probably have to be regarded as directory, for the length of the adjournment would not be of the essence of the holding of a term of court, and the statute contains no inhibitory language.

To hold that a county court or other tribunal, charged with the performance of a ministerial duty, at a given term, cannot be re-convened and compelled to perform that duty, as of that term, when it has adjourned without having performed it, would place it in the power of every such body to refuse performance of its duty, and, at the same time, deny to those who are entitled to have it performed any remedy whatever.   In order to evade performance of duty, it would be necessary only to adjourn.  In *Daniel* v. *Simms*, 49 W. Va. 554, the power to re-convene a board of canvassers after a final adjournment on its part, without having legally performed its duties, was expressly declared and exercised, and that case has been followed by several others.   Although a distinction

between the county court, sitting as a board of canvassers, and a county court sitting as such is urged, no substantial ground therefor is perceived. The argument is that, as the court had finally adjourned, it would not, if re-convened, be in regular session, but in special session, and, as the action required of it can only be taken in regular session, it would be a vain and futile thing to require the members of the court to re-assemble. The theory upon which a court or other tribunal is re-convened, by *mandamus*, and compelled to perform its duty, is that it cannot legally adjourn as long as a mandatory duty rests upon it, respecting anything to be done at that term. The adjournment is final as to all other matters, but as to that matter, there is not, in law, any adjournment, but only a formal adjournment and a physical absence of the members of the court. As to such matter, the court has no power to adjourn, if proper steps to prevent it are promptly taken, and when the members re-assemble under the mandate of a supervising tribunal, the court is in regular session *quoad* the duty it has failed to perform.

*Writ Awarded.*