# CHARLESTON.

CITY OF CHARLESTON *et als* v. LITTLEPAGE, JUDGE.

Submitted October 27, 1913.    Written Opinion Rendered November 4, 1913.

1.  MUNICIPAL CORPORATIONS—*Employment of Attorney—Authority—Contract.*

    The employment of an agent or attorney to perform a special service for a municipal corporation need not, in the absence of a statute requiring it, be evidenced by a formal ordinance, by-law, or resolution, nor is it essential that it be in writing.  (p. 158).

2.  PROHIBITION—*Conditions Precedent—Discretion.*

    The rule under which a supervising court sometimes requires an applicant for a writ of prohibition first to make application to the lower court for discontinuance or vacation of the proceeding or action complained of on the ground of lack of jurisdiction, is a discretionary one of courtesy and deference to the court below, and does not apply if it appears in any manner that such court has acted deliberately or has considered the question of its jurisdiction and intends to proceed.  (p. 159).

3.  COURTS—*Prohibition—Jurisdictional Facts—Time for Consideration of Pleading.*

    When the jurisdiction of a court depends upon the existence of facts, it has no right or power to proceed or act upon a pleading which does not substantially set forth such facts, and, if it has acted upon such insufficient pleading, its claim of right to time for consideration of the sufficiency thereof does not justify or sustain its action in refusing to vacate the void order.  (p. 162).

4.  MUNICIPAL CORPORATIONS—*Powers—Control by Courts.*

    In the absence of a statutory right of supervision or control, a court cannot, at the instance of citizens and tax payers, in any manner restrain or control the governing body of a municipal corporation, in the exercise of powers and functions vested in it by law, whether the discretion and power so vested is legislative, executive or administrative.  (p. 164).

Petition for writ of prohibition by the City of Charleston

and others against Hon. Samuel D. Littlepage, Judge, etc., and others.
                                                            Writ Awarded.

J. E. Chilton and John Baker White, for petitioners.

B. T. Clayton, Jones, Murphy & Ballard, Morgan &*Morgan, and C. J. Van Fleet, for respondents.

POFFENBARGER, PRESIDENT:

The circuit court of Kanawha county having provisionally enjoined the City of Charleston, the members of its Board of Affairs and Council from consideration of a certain ordinance and action thereon, granting a franchise to the West Virginia Water & Electric Company, securing to it privileges in the city streets and alleys for pipe lines for supplying the city and its inhabitants with water, obligating the city to take a certain number of hydrants at specified rentals and prescribing rates and regulations for supply of water to the inhabitants of the city, and from passing said ordinances, it being then pending in the council, the city and others of the defendants applied to this Court for a writ of prohibition, to restrain the judge of said court and the plaintiffs in the said bill from enforcing the injunction and from further procedure upon the bill.

Before this action was taken, certain members of the council and the West Virginia Water & Electric Company appeared and filed demurrers to the bill. Chilton, MacCorkle & Chilton tendered a demurrer on behalf of the City, the Board of Affairs and Council which was objected to on 'the ground of alleged lack of authority in the attorneys to appear for the city and the court took the objection under advisement. Thereupon and on the same day, four members of the council moved the court to dissolve the injunction, which motion the court overruled. The return sets up the alleged failure of the City, its Board of Affairs and Council, to appear and demurr to the bill or move to dissolve the injunction, as matter for abatement of the rule, and an affidavit was filed showing a search of the records of the meeting of the Board of Affairs had disclosed no order or entry appointing or employing J. E. Chilton, a member of said law firm, who actually appeared for the City, an attorney for the Board of Affairs nor

any authority in him to appear on behalf of the city in said cause, or to appear for it in this proceeding to prohibit the prosecution of the injunction bill.

The effort to show such lack of authority apparently proceeds upon the assumption that the employment of the attorney must have been made a matter of record. He is not acting in the capacity of an officer, either elective or appointive. He is a mere employee or agent and a municipal corporation, in the absence of a statutory restriction upon its powers, may make verbal contracts for such employment, just as private corporations and individuals may. "The contract need not be in writing, except where so required by statute or ordinance. So the employment, in the absence of statutory or charter provisions, need not necessarily be by a formal ordinance, by-law, or resolution. * * * An implied request for services, as well as an implied promise to pay therefor, may be raised against a municipality, the same as against an individual, by circumstances." 28 Cyc. 586. A statute requiring all officers not otherwise elected to be elected by the general council does not apply to mere clerks and employes, or laborers, whose appointment may be made in such manner as the council shall designate. *Lowry* v. *Lexington,* 113 Ky. L. R. 763. That such contracts to be valid need not be made matter of record is well established. *Ross* v. *City of Madison,* 1 Ind. 281; *Langsdale* v. *Bouton,* 12 Ind. 469; *Indianapolis* v. *Skeen,* 17 Ind. 628; *McCabe* v. *Commissioners,* 46 Ind. 383; *Logansport* v. *Dykeman,* 116 Ind. 15; *Wilt* v. *Town of Redkey,* 29 Ind. App. 199. A verbal employment of an attorney was made in *Board* v. *Sackrider,* 35 N. Y. 154, and the court found no fault with the employment on account of its form, or rather for lack of writing or matter entered of record, but declared the action of the attorney in bringing the suit void, because the commissioners had not first determined to institute it, but had left it in his discretion to do so. As the Board of Affairs clearly had the power to make a verbal contract of employment with the attorney to represent the city, the failure of its record to disclose an order, resolution or entry of such employment does not disprove its existence, and no other evidence is offered. When an attorney appears for a client, there is a presumption in favor of his

employment which must be overcome with proof, before the court can deny him the privilege of representing his client. *State* v. *Ehrlick,* 65 W. Va. 700; *Mullin* v. *United States,* 118 U. S. 271; *Railroad Co.* v. *United States,* 108 U. S. 512. The general rule is that the question of an attorney's authority to represent an alleged client can only be raised on a motion directly made for that purpose and supported by affidavit, after notice of the motion. 4 Cyc. 931. In view of these principles and authorities, it is clear that the authority of the attorney to appear here for the city of Charleston has not been successfully denied or questioned.

If the circuit court had cognizance of the matter in which the attorney appeared, the judge thereof would likely have been entitled to time for consideration of the objection informally made; but, if the cause was not within its jurisdiction, he could not bring it within it by his claim of right to time for consideration of the objection. Courts always pass upon questions of their own jurisdiction at their peril, and an erroneous decision on that point avails nothing. However, as the court's alleged lack of jurisdiction was brought to its attention by the demurrer of four members of council and the corporation seeking the franchise, and the motion of the four members of the council to dissolve the injunction, it is immaterial whether the city properly filed its demurrer or not. It is not the purpose of the rule, under which we sometimes require want of jurisdiction in the lower court to be brought to its attention as a condition precedent to the application for the writ of prohibition, to require the question of jurisdiction to be there litigated and decided for review here, but only to give that court an opportunity to correct its act in excess of its jurisdiction, due to misapprehension or oversight or some other adventitious circumstance. The rule is a mere exercise of the discretion of this Court and is not in any sense rigid or arbitrary. Its application is clearly unnecessary in any instance in which the intention of the inferior court to act beyond its jurisdiction is made apparent in any way. The rule was first announced by this Court in *Board* v. *Holt,* 51 W. Va. 435, and it was there characterized as a rule of courtesy, or deference to the judge below. In *Board* v. *Holt,* 54 W. Va. 167, it was not applied because deliberate action on the part

of the judge was apparent. It was applied in *Jennings* v. *Judge*, 56 W. Va. 146, because it was apparent the decree complained of had been inadvertently entered. At least there was nothing to show it had not been so entered. The necessity of application to the court below in any case was denied in *Swinburn* v. *Smith*, 15 W. Va. 483; *Hein* v. *Smith*, 13 W. Va. 358; *Supervisors* v. *Gorrell*, 20 Gratt. 484. Here it appears beyond question that the court's alleged want of jurisdiction had been brought to its attention. Demurrers to the bill, sufficient to raise the jurisdictional question, had been filed, and the court had overruled a motion to dissolve the injunction, made by the parties to the bill, having a right to appear and make the motion. Hence there is a clear lack of just grounds for application of the discretionary rule of courtesy.

Suing as residents, citizens, qualified voters, householders and freeholders, the plaintiffs charged in their bill intent and purpose on the part of the council of the city to create an unconstitutional debt by the passage of the ordinance. This charge was founded upon provisions in the proposed ordinance or franchise binding the city to rent from the company 170 fire hydrants at an annual rental of $38.00 each, payable at the rate of $9.50 quarterly for each hydrant, making a total of $1,615.00 per quarter, such rentals to be paid during the life of the contract or franchise, an absolute period of thirty years and an additional conditional one of twenty years. This contract, if consummated, would impose an annual charge for water hydrants of $6,460, and there is no suggestion of insufficiency of the revenue or income of the city to pay it. It does not impose an indebtedness of thirty or fifty times the amount, which, added to the existing indebtedness, might make a sum in excess of that permitted to the city by the constitution and statutes. *Allison* v. *Chester*, 69 W. Va. 533. As this provision does not create an indebtedness within the statutory or constitutional limitations, nothing in the charter of the city requires the matter to be submitted to a vote of the people and the charge of invalidity or excess of authority, based upon failure so to submit the proposition is wholly unsustained and without foundation. That the contract is intended to run beyond the terms of office of the present council and board of affairs does not make the pass-

age thereof an *ultra vires* act, for nothing in the charter or general statutes prohibits the making of such a contract. The bill contains a number of allegations as to excessive or extravagant charges for service, but these are all matters clearly within the jurisdiction and power of the council. A provision for the purchase of the plant at the expiration of thirty years is said to be illegal because it requires the city to pay for the plant on the basis of its productive value, but this allegation is contradicted by the provision itself, exhibited with the bill. It gives the city an option of purchase "at a fair valuation" to be determined by arbitration, but the arbitrators are authorized to take into consideration the productive value of the water works company's rights and privileges and property, but not the value of the unexpired term of the franchise. A charge of perpetuity in the franchise is founded upon a provision requiring the company, at the expiration of the franchise to continue to furnish water to the city and its inhabitants at the rates and upon the conditions therein prescribed until other rates may be agreed upon. Clearly this provision contemplates nothing more than continued operation at the option and will of the city. It is a provision for the benefit of the city and its inhabitants. It enables them to obtain water from the company at the expiration of the franchise, or pending settlement of the terms of purchase, in case of necessity therefor, due to the inability of the city or its unpreparedness to obtain water from other sources. The right of the company to occupy the streets and furnish water is expressly limited to fifty years at the most, and the right to shorten this period by purchase is reserved to the city. Notwithstanding the charge of insolvency of the applicant for the franchise, the ability to perform the service required of it is clearly a question for the council. The city is not bound to pay anything unless the services are performed. Moreover, failure to comply with conditions and covenants in favor of the city and its inhabitants is made a ground of forfeiture by the terms of the franchise. Neither the charter nor any statute prescribes any standard of measure of financial ability of persons or corporations applying for franchises. A clause in the franchise providing a scheme or method of cooperation between the applicant and the city for the licensing of

plumbers is said to amount to a delegation of the police powers of the city, but an examination of this provision shows a reservation of full control of these licenses by the city. There is no surrender of its power of revocation of licenses, and applicants have a right to appeal to the Board of Affairs in cases of denial of their applications by the company. A charge of exclusiveness in the franchise and intent to establish a monopoly is founded upon a provision binding the city not to maintain or operate any water works plant or system in the city, except the system now owned by the water works company. This provision would fall under the rule of strict construction, *Gas Company* v. *Parkersburg*, 20 W. Va. 435; and, under that rule, it would not be construed as denying to the city power to grant a rival franchise. Its plain purpose is to prevent the city from becoming itself a rival of the grantee of the franchise. The bill contains no charge of fraud or corruption on the part of the council, but it says large and powerful influences have been brought to bear through the public press and otherwise upon the members of the council and that deceit, fraud and misrepresentations had been resorted to in order to deceive the people. There is nothing in this charge inconsistent with honest action on the part of the council. Hence the allegation has no semblance of a charge of fraud or corruption on their part.

In the argument, sufficiency of the allegations of the bill to show acts *ultra vires* or to make out a case of fraud, was not vigorously insisted upon. Their insufficiency was rather tactitly admitted, but the right of the court below to let the injunction stand pending consideration of the sufficiency of the bill was insisted upon and constituted the shibboleth of the argument. This position is all together untenable. Though not often so expressed in terms by the courts, the rule is that, in passing upon the question of its own jurisdiction, a court always acts at its peril. Its decision upon that question affords it no protection from supervisory process from a higher court and confers no right upon the parties in whose favor the decision was rendered. Had not the injunction been awarded and the exercise of jurisdiction on the bill made effective, the judge of the circuit court could no doubt have taken time for consideration of the question. He could

deliberate as to whether he would act. But he had already acted upon the bill and granted the relief prayed for. If the bill conferred no jurisdiction, his claim of right to time for consideration of the demurrer came after action, and, insisting upon the right to consider, he refused first to undo what he had done without authority. Being wrongfully in the domain of another, he insisted upon staying there pending consideration of his right of occupancy. Though it may not have been expressly stated in the return to the rule or in argument in the case of *Board* v. *Holt,* 51 W. Va. 435, such was the position of the judge of the circuit court in that case. He refused to entertain a motion to dismiss and postponed the hearing to a future time. This was a tacit, if not express, assertion of right to time for consideration. This Court denied any such right by saying his action in refusing dismissal was equivalent to a determination in favor of jurisdiction and subjected him to the writ of prohibition. Such appears to have been the interpretation of the rule in *Jennings* v. *Judge,* 56 W. Va. 146, in which the circuit court was accorded mere opportunity to vacate a void decree. It says in effect that, if the judge refuses to do so upon request, he will be immediately subjected to the writ of prohibition. To warrant interposition by the writ of prohibition, it is only necessary to show that the inferior tribunal is actually proceeding or about to proceed in some matter in which it has no rightful jurisdiction. *Hassinger* v. *Holt,* 47 W. Va. 348; High Extr. Rem., sec. 780. Thus stated by courts everywhere, the terms of the rule preclude right to time for consideration after action, and authorize prevention of action without any allowance of time for consideration. In other words, a court proceeded against by prohibition decides in favor of its own jurisdiction at its peril, whether its decision be in the form of an act done or a claim of right to time for consideration, with intent to act pending that consideration. Its action is not sustained by reason of the necessity of decision of legal questions in the process of the unauthorized act. In *McConihay* v. *Guthrie,* 21 W. Va. 134, the lower court, in affirming the right of a railroad company to take land within twenty feet of a dwelling, found it necessary to pass upon intricate questions of statutory interpretation and construction. Nevertheless, this

Court awarded prohibition. In *Ensign Co.* v. *Carroll*, 30 W. Va. 532, the action of the court below in perpetually enjoining a judgment involved many intricate questions, but the necessity of their decision afforded no protection from the writ of prohibition. The proposition thus affirmed is fundamental and its soundness so apparent and self-evident that it is seldom questioned.

That allegations of fact, when necessary to vest jurisdiction in a court, must be sufficient is an obvious corollary of the proposition just asserted. To say the court may act upon insufficient allegations, because they may be made sufficient by amendment, is clearly inconsistent with the rule or principle. The facts stated do not confer jurisdiction and ability to amend is mere matter of surmise and conjecture. Nothing in the view of the court establishes it. Hence it is not a fact within the knowledge of the court. If it is permitted to act under such circumstances, it clearly acts without jurisdiction. To permit action upon such a bill or pleading will enable the court at any time to exercise jurisdiction in cases in which it has none. If it has power to retain for amendment and act upon the pleading, pending the process of amendment, the time allowable for amendment would be within its discretion and not reviewable. It might take a week, a month, or a year, during which there would be action without jurisdiction shown. The power to proceed at all depends upon certain facts and they are not shown and may never be. If a court could act upon such a pleading, there would never be any lack of jurisdiction except in those cases in which it is denied by some statute or principle of law and is in no sense dependent upon facts.

Assuming for the purposes of this case, without deciding it, that citizens and tax payers may enjoin the council of a city from passing an ordinance, because the proposed act, when done, will be one *ultra vires,* and that this may be done without any conclusive showing that the pending ordinance will be passed, or an averment of facts, showing intent on the part of the council to pass it, as contradistinguished from a mere claim that it will be, and that citizens and tax payers, without showing any special interest or injury peculiar to them and distinct from that which the general public will suffer by reason of the

act, the question raised by the bill is, whether or not citizens and tax payers may enjoin a city council from proceeding to consider and act upon a proposed ordinance without a disclosure of lack of power or jurisdiction in the council to consider and act upon it. In other words, the question is, whether citizens and tax payers may, by an appeal to the court, control the discretion, judgment and action of a city council within its own jurisdiction. That they cannot do so is plainly apparent. A municipal corporation is vested by law with certain powers which it may exercise as freely as a court may exercise its own jurisdiction or an individual his own right respecting his property and privileges accorded by law. Within the limitations prescribed by law, a citizen may do what he pleases with his property and make such contracts as he sees fit. His discretion respecting these matters, whatever it may be called, is beyond the power of control by courts. So is that of a municipal council. Such matters as have been entrusted to it or are determinable by its discretion, no matter whether that discretion is legislative or administrative, belongs to it and to no other tribunal. If its discretion is reviewable or controllable by the citizens under a referendum statute, their right of veto or control is a limitation upon the city's powers, but, if power has been vested in the city without any such limitation, the absence thereof affords no ground for intervention or control by the courts. If a municipal corporation is exceeding its powers, courts may, under some circumstances, intervene by injunction or otherwise and prevent such action. What these circumstances are and what interest the citizen must have in order to confer such right upon him, it is not necessary here to inquire. It suffices to say that, in those instances, the jurisdiction of the court commences with the lack of jurisdiction in the city or its governing body, and the court cannot proceed until it has been shown. In the absence thereof, it has no power to interfere by certiorari, appeal, injunction or any other remedy. *County Court* v. *Boreman,* 34 W. Va. 87; *County Court* v. *Boreman,* 34 W. Va. 362; *County Court* v. *Armstrong,* 34 W. Va. 326; *Miller* v. *County Court,* 34 W. Va. 285; *State ex rel* v. *County Court,* 33 W. Va. 589; *Fleming* v. *Guthrie,* 32 W. Va. 1. Nor has equity jurisdiction to enjoin every illegal act

on the part of a governing body or public officer. *Mann v. County Court*, 58 W. Va. 651. *Morgan v. County Court*, 53 W. Va. 372. Ordinarily, in the absence of a statutory right of interference, a citizen must show, in addition to the illegality, an injury to himself from the illegal act, peculiar and distinct from that suffered by the public in general.

Upon these principles and conclusions, the writ of prohibition prayed for was awarded.

*Writ Awarded.*