# CHARLESTON.

BAKER *et al.* v. O'BRIEN, JUDGE.

Submitted September 19, 1916.    Decided September 26, 1916.

COUNTIES—*Prohibition—Removal of County Seat—Review.*

> Proceedings before a county court, in conformity with the provisions of §15, ch. 39, Code, authorizing the submission of the relocation of the county seat to the legal voters of the county upon the petition of two fifths of such voters, duly verified, being in character ministerial, are not reviewable on certiorari on the ground that less than the required number of legal voters signed the petition praying such submission; and prohibition lies to prevent such review.

(MASON, JUDGE, absent).

Petition by C. E. Baker and others for a writ of prohibition against W. H. O'Brien, as Circuit Judge, and others.

*Writ issued.*

*Geo. F. Cunningham* and *Pendleton, Mathews & Bell,* for petitioners.

*Stone & Wolfe,* for respondents.

LYNCH, JUDGE:

Upon a petition duly filed and verified, pursuant to and for the purpose authorized by §15, ch. 39, Code, signed by C. E. Baker and others alleging themselves to be taxpayers and to constitute two fifths of the legal voters of Jackson county, the county court of that county entered an order submitting to the voters thereof the question of relocating the county seat at Sandyville, therein situated, and requiring the election to be held on the 7th day of November, 1916, the date fixed by law for the election of national, state, county and district officers. The petitioners executed the bond likewise required by that section. W. H. Hutchinson and others, also alleged to be voters and taxpayers of the county, remonstrated against the allowance of the prayer of the petition, and requested the county court to fix a day to hear them in opposition thereto. While the court permitted the filing of the remonstrance, it

denied the motion to defer action for a time sufficient to permit the protestants to produce proof to show that the petition did not contain the requisite number of legal voters, but did defer final action thereon until the second succeeding day. On that day the county court entered the order of submission, notwithstanding and ignoring the remonstrance of Hutchinson and others. What they proposed to show was lack of sufficient verification of the petition so filed; indefiniteness as to the site of the proposed relocation; that the petition did not contain the names of the requisite number of legal voters, and did contain the names of persons who were not legal voters; and that some of the persons whose names were appended thereto desired to withdraw their names therefrom; and claimed that, if these objections were sustained by competent proof, it would appear that less than two fifths of the qualified voters of said county desired and prayed the relocation of the county seat.

Deeming themselves aggrieved by the order entered by the county court, Hutchinson and those associated with him, upon a petition addressed to the judge of the circuit court of Jackson county praying therefor, secured from H. D. Rummel, judge of the court of common pleas of Kanawha county a writ of certiorari to review the proceedings of the county court and commanding the clerk thereof to certify and return to the clerk of the circuit court of Jackson county the record and proceedings had in the matter of the relocation of the county seat. Later, Baker and others obtained from this court a rule in prohibition against the judge of the circuit court of Jackson county to show cause why he should not be restrained from hearing the case upon the certiorari so granted.

Originally, the location and relocation of county seats were the result of the exercise of a legislative function. However, by §39, art. 6, of the constitution, the legislature can not now pass any special law "locating or changing county seats". Section 15, ch. 39, Code, confers upon the several county courts that right upon compliance with the conditions therein prescribed. And it has been held in *Doolittle* v. *County Court,* 28 W. Va. 158, and *Mann* v. *County Court,* 58 W. Va.

651, that the exercise of the duties so imposed is ministerial in its nature. This being so, it is obvious that certiorari will not lie to review the proceedings had under the statute, as that writ is available only to review judicial action. *Railroad Co. v. Triadelphia*, 58 W. Va. 487; 6 Cyc. 752; Harris on Certiorari §2. These cases so fully discuss the rules and principles governing the application of the writ that further discussion thereof would serve no useful purpose. Nor is it essential or profitable to determine whether the judge of the common pleas court had jurisdiction to award the writ; for evidently he did not have such authority if the judge of the circuit court of Jackson county could not properly award it.

What, then, is the legal status of Hutchinson and those associated with him as protestants against the order of the county court? Although in their answer to the petition of Baker and others they prayed permission to be made parties to the proceeding, the prayer was not granted and they were not made such parties. But they did protest, object and except to the rulings of the county court upon the several motions made by them and to the entry of the final order submitting the matter to a popular vote. To some may seem logical and sound the converse of the proposition stated in *County Court v. Boreman*, 34 W. Va. 87—that private citizens acting on behalf of themselves and other taxpayers similarly situated, who have no special property rights to be affected, and have not made themselves litigants or submitted any motion or taken any exceptions before the county court in proceedings to relocate and rebuild a bridge, can not have a review of the action of the court by certiorari. It might seem, from that case, they may have such relief, though not parties to the proceeding, because, having submitted motions and taken exceptions, they are in a position to demand that relief. The decision impliedly supports that proposition. But, as we have seen, and as the authorities cited show, this contention can not be sustained. Certiorari is not the proper writ to review the action of a county court where it is proceeding to exercise functions purely ministerial. Doubtless, the proposition so impliedly expressed in the second point of the syllabus in *County Court v. Boreman* had in part its

basis in the assumption, appearing from the opinion, that the action there sought to be reviewed by certiorari was judicial or *quasi* judicial in character. Here, the action of the inferior tribunal was not judicial. Of course it is to be presumed the county court, in passing upon the petition and the protesta- tion, exercised discretion, deliberation, thought and judgment. These elements, however, enter into the consideration of all questions of every character, whether executive, legislative or judicial. But this fact does not render judicial that which is purely ministerial or legislative. This distinction is pointed out clearly in *Railroad Co.* v. *Triadelphia, supra..*

The protestants, then, occupied the same relation to the proceedings before the county court while exercising the min- isterial functions authorized by §15, ch. 39, Code, as if they had remonstrated against a legislative bill in the process of enactment for the same purpose before the legislature was constitutionally deprived of its authority in that respect. They stood in no other or different attitude or relation than that of protestants against a legislative act pertaining to the same subject while that department of the state government had the exclusive supervision of the relocation of county seats. The county court did not by any formal order make the protestants parties; and perhaps it could not do so within the ordinary meaning of the term. Nor did they become such by reason of their objections and exceptions before that tribu- nal. The right to remonstrate was accorded to them; but they did not thereby become litigants. There was nothing to liti- gate. No property or personal rights were involved. Only a party who feels himself justly aggrieved by the result of a judicial proceeding can have the benefit of a review thereof on certiorari in circumstances warranting its application. The protestants were without authority to obtain and prose- cute such writ to review the action of the county court upon the proposition before it.

The only other question presented and necessary for decis- ion regards the rule in prohibition awarded by this court. That such writ lies to restrain the prosecution of the writ of certiorari, when granted without jurisdiction or authority, has been settled by this court in *Meeks* v. *Windon,* 10 W. Va.

180; *County Court* v. *Boreman, supra;* and *Meyers* v. *Circuit Court*, 67 W. Va. 444. Nor was it necessary, as a prerequisite to the award of the rule in prohibition in this case, to invite the attention of the court to be prohibited to the error committed in the award of the certiorari writ. For, without that procedure, the rule may issue where it appears upon the record of the inferior tribunal that it had no authority to enter the order complained of, or that it acted deliberately, or has considered the question of its jurisdiction and intends to proceed in the matter before it. *St. Marys* v. *Woods*, 67 W. Va. 110; *Charleston* v. *Littlepage*, 73 W. Va. 156; see also note in 21 Ann. Cas. 167.

We are of opinion, therefore, to award the writ prayed for.

*Writ issued.*