350 S.E.2d 555

**Terry PERDUE, David Pancake, Betty Barrett, Howard Mullens, Greg Hawkins and Garry Black**

v.

**C.W. FERGUSON, III, as Special Judge of the Circuit Court of Wayne County, West Virginia.**

No. 17297.

Supreme Court of Appeals of West Virginia.

Nov. 13, 1986.

Charles F. Dodrill, Huntington, for petitioners.

Lafe C. Chafin, Barrett, Chafin, Lowry & Hampton, Huntington, for respondent.

McHUGH, Justice:

The petitioners, Terry Perdue, David Pancake, Betty Barrett, Howard Mullens, Greg Hawkins and Garry Black, who are six of the eleven members of the City Council of the City of Huntington, West Virginia, brought this original prohibition proceeding against the respondent, the Honorable C.W. Ferguson, III, as special judge of the Circuit Court of Wayne County, West Virginia, to prevent that court from taking any further action in injunction proceedings which had been brought by members of the Huntington Floodwall Board against the members of the City Council of the City of Huntington to restrain City Council from enacting and enforcing an ordinance changing the duties of the Huntington Floodwall Board.

## I

The Huntington Floodwall Board was established by an ordinance enacted by the City Council of the City of Huntington.[1] The purpose of the Huntington Floodwall Board was to operate and maintain the floodwall system of the City of Huntington. The City Council, not the Floodwall Board, is responsible for funding the floodwall system.[2]

On August 11, 1986, City Council heard a first reading of a proposed ordinance which would alter the manner of funding the

---

1. The current codification of the ordinance pertaining to the Huntington Floodwall Board is *Huntington, W.Va., Code* §§ 13–10, *et seq.* (1964). It is not clear from the record herein when the Huntington Floodwall Board was created. Under the Federal Flood Control Act of 1936, as amended, federal funding of a flood control project is not available until the states, political subdivisions thereof, or other responsible local agencies have given assurances satisfactory to the Secretary of Army that the local agency will, *inter alia,* operate and maintain all of the flood control works after completion, in accordance with regulations prescribed by the Secretary of the Army. 33 U.S.C. § 701c. (1982).

2. *Huntington, W.Va., Code* § 13–20 (1964).

floodwall system to that of an actual service charge or fee (flood protection service fee), authorized by *W.Va.Code*, 8–13–13 [1971], to be calculated at the rate of three-fourths of one cent ($0.0075) per square foot of floor space in a residential or commercial building or structure which is protected from flooding by the city's floodwall system.[3]

The proposed ordinance would also make certain organizational changes, primarily transferring the assets and the control of the floodwall system from the Floodwall Board to a newly created division within the city's Department of Public Works, to be called the Division of Flood Protection. The Floodwall Board, with its existing membership, would be transformed by the proposed ordinance into a Floodwall Advisory Board, with only advisory, not operational, responsibilities. Second reading of this proposed ordinance, for passage thereof, was scheduled for the evening of August 25, 1986.

In the afternoon of August 25, 1986, the members of the Huntington Floodwall Board, by their attorney, petitioned the respondent, as special judge for the Circuit Court of Wayne County, for an injunction against the members of the City Council of the City of Huntington, to restrain them "from taking any further action with regard to dissipating the authority and operations of the Huntington Floodwall Board and transferring its authority and responsibilities to the Department of Public Works of the City of Huntington...." [4]

On August 25, 1986, the respondent herein entered an order granting the preliminary injunction requested by the Huntington Floodwall Board. The injunction "restrained [the members of City Council] from taking any further action ... in regard to changing the authority and duties of the ... Huntington Floodwall Board and from in any manner interfering with the continued operation of the floodwall system of the City of Huntington, West Virginia, until the further order of [the] [c]ourt." The order also set a date (September 9, 1986) for a hearing on whether the injunction should be made permanent. A copy of the order was served upon two of the petitioners herein (David Pancake and Howard Mullens) immediately prior to the scheduled meeting of City Council on August 25, 1986, at 7:30 p.m. A copy of the order and petition was also delivered at 7:15 p.m. on that date to the city attorney, who thereupon advised the City Council that, in his opinion, the injunction order

---

3. We express no opinion on the validity of a municipal service charge calculated on a square foot or similar basis, as that issue is not before us in this case. We also do not discuss the provisions of *W.Va.Code*, 8–16–18 [1969] concerning rates or charges for services rendered by municipal public works.

4. The respondent, who had been retired from the judiciary, had been recalled by administrative order of this Court, dated January 31, 1985, to be special judge for all cases wherein the elected circuit judge of Wayne County was disqualified. *See* Rule XVII.C.(1)(b), *W.Va. Trial Court Rules; W.Va.Code*, 51–9–10 [1975]. The elected circuit judge of Wayne County, the Honorable Robert Chafin, is the brother of the attorney representing the Huntington Floodwall Board.

The injunction proceedings were brought in the Circuit Court of Wayne County, not in the Circuit Court of Cabell County. The City of Huntington is located primarily within Cabell County but is also located in Wayne County. According to 1980 United States census figures, 7.84 percent of the population of the City of Huntington resides in Wayne County. One of the eleven members of the Huntington City Council is from the Wayne County council district. About 9,000 feet of the total of about 57,000 feet of the Huntington floodwall is located within Wayne County. City Hall is, however, located in Cabell County. Therefore, the petitioners herein assert that venue for the injunction proceedings against them in their official capacity as members of City Council lies in Cabell County, not Wayne County, under *W.Va. Code*, 56–1–1(a)(2), amended effective May 1, 1986, as the principal office of the City of Huntington, as well as the residence of the mayor thereof, are located in Cabell County. Due to our disposition of this case on another basis, it is not necessary to address this venue question. We do not decide whether, under the amended venue statute, venue lies, in the case of a corporate defendant, in the county wherein the cause of action arose, in addition to the county wherein the corporate defendant's principal office is located or wherein its mayor, president or other chief officer resides. We also do not decide the effect of *W.Va.Code*, 53–5–3 [1931] upon venue in injunction proceedings.

was void for lack of proper appointment of the special judge.

That evening, City Council proceeded to have the proposed ordinance in question read the second time, and the same was passed by a vote of six to three, with two abstentions.

On August 26, 1986, upon the affidavit of one of the members of the Huntington Floodwall Board, a rule was issued by the respondent herein, returnable on August 28, 1986, for the petitioners herein, the six members of City Council who had voted in favor of the new floodwall ordinance, to show cause why they should not be held in contempt of court for violating the respondent's injunction order of August 25, 1986.

The petitioners subsequently filed with this Court their petition for a writ of prohibition to preclude the respondent from any further proceedings. We issued a rule to show cause why such relief should not be granted and thereafter heard oral argument of counsel.

## II

The fundamental issue in this case is whether the trial court exceeded its legitimate powers by granting a preliminary injunction against enactment and enforcement of the municipal ordinance. We hold that it did.

In their petition for an injunction in this case, the members of the Huntington Floodwall Board alleged merely that (1) the ordinance would, by eliminating such Board, breach the city's agreement with the federal government pertaining to the operation and maintenance of the floodwall system of the city[5] and that (2) the ordinance would make appointment to the newly designated Floodwall Advisory Board more "political," by shifting from various community organizations to the mayor the

right to designate nominees, in the event that any of the holdover members from the existing board resign in the future.

A municipal council or other governing body of a municipality, when acting or attempting to act in a legislative capacity, upon a subject within the scope of its powers, is entitled to the same immunity from judicial interference with the exercise of legislative discretion as is the state legislature. *See, e.g., Hackney v. City of Guthrie*, 171 Okla. 320, 322, 41 P.2d 705, 707 (1935). A court of equity normally may not, therefore, enjoin a municipal legislative body from exercising legislative powers by enacting a municipal ordinance. *See* syl. pt. 4, *City of Charleston v. Littlepage*, 73 W.Va. 156, 80 S.E. 131 (1913). *See also* 5 E. McQuillin, *The Law of Municipal Corporations* § 16.92 (3d ed. rev. vol. 1981); 1 C. Antieau, *Municipal Corporation Law* § 4.28 (1986); annotation, *Injunction against legislative body of state or municipality*, 140 A.L.R. 439 (1942); 42 Am. Jur.2d *Injunctions* § 170 (1969); 43A C.J.S. *Injunctions* § 126 (1978). This principle that an injunction does not lie to restrain enactment of an ordinance applies generally even though the proposed ordinance is alleged to be unconstitutional or otherwise invalid. *See City of Charleston v. Littlepage*, 73 W.Va. 156, 160–62, 80 S.E. 131, 133–34 (1913); *New Orleans Waterworks Co. v. [City of] New Orleans*, 164 U.S. 471, 482, 17 S.Ct. 161, 165, 41 L.Ed. 518, 524 (1896); 5 E. McQuillin, *The Law of Municipal Corporations* § 19.04 (3d ed. rev. vol. 1981). The basis for this general rule is not merely precedence but the constitutional separation of powers among the branches of government. *See, e.g., Smith v. Brock*, 83 R.I. 432, 436, 118 A.2d 336, 338 (1955).[6]

---

**5.** While the Floodwall Board would cease to have operational responsibilities, those same responsibilities would be assumed by another local agency (the Division of Flood Protection of the Department of Public Works). The ordinance would not breach the agreement with the federal government, as long as there is a responsible local agency, regardless of its name, which is fulfilling the agreement. A copy of the agree-

ment with the federal government is not a part of the record.

**6.** *W.Va. Const.* art. V, § 1 provides in pertinent part: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others[.]"

■ Under this general rule the trial court in this case clearly exceeded its legitimate powers by enjoining City Council from even enacting the ordinance transferring to another local agency the control of the city's floodwall system.[7]

As stated earlier in this opinion, City Council, despite the preliminary injunction, enacted the ordinance. The focus therefore shifts to whether the injunction lies to restrain *enforcement* of the ordinance.

Courts are also reluctant to restrain the enforcement of a municipal ordinance. This reluctance is part of the broader principle that courts generally disfavor the interference with governmental functions by the equitable and extraordinary remedy of an injunction:

> As a general rule equity is conversant only with matters involving property and the maintenance of civil rights and will not interfere by injunction with the duties of any department of the government except under special circumstances and when necessary to the protection of property or other rights against irreparable injury.

*Backus v. Abbot*, 136 W.Va. 891, 900, 69 S.E.2d 48, 53 (1952).

■ In a proceeding for an injunction against the enforcement of a municipal ordinance as invalid, the presumption is that an ordinance is valid when it is valid on its face as having reference to a subject matter within the corporate powers, and the burden of proof is upon the person asserting the invalidity of the ordinance. *See* syl. pts. 3–4, *Harrold v. City of Huntington*, 74 W.Va. 538, 82 S.E. 476 (1914); *City of Virginia Beach v. Hotaling*, 218 Va. 14, 15–16, 235 S.E.2d 311, 312 (1977). *See gen-*

erally 6 E. McQuillin, *The Law of Municipal Corporations* §§ 20.06–20.08 (3d ed. rev. vol. 1980). For example, it is presumed that an ordinance, especially one concerning the public health, safety or welfare, was passed in good faith and that the legislative body of the municipality acted in the best interest of the community. *See Hadacheck v. Sebastian*, 239 U.S. 394, 413–14, 36 S.Ct. 143, 147, 60 L.Ed. 348, 357–58 (1915); *Soderfelt v. City of Drayton*, 79 N.D. 742, 752–53, 59 N.W.2d 502, 507 (1953); *Spencer v. City of Medford*, 129 Or. 333, 338, 342, 276 P. 1114, 1115, 1116–17 (1929). Similarly, a court will not "impute fraudulent motive to the action of a town-council and the people in performing functions authorized by law." *[Point Pleasant] Bridge Co. v. [Town of] Point Pleasant*, 32 W.Va. 328, 334, 9 S.E. 231, 233 (1889). *Accord, Davis v. [Town of] Point Pleasant*, 32 W.Va. 289, 297, 9 S.E. 228, 231 (1889).

■ The ordinance in the present case, involving administration of a floodwall system, concerns the public safety and health, and was, therefore, presumptively passed in good faith.

■ Even if it is shown that a municipal ordinance is invalid, an injunction does not lie to restrain the enforcement of an invalid municipal ordinance merely because the ordinance is unconstitutional, arbitrary or otherwise invalid; other circumstances, such as irreparable injury, inadequacy of remedies at law, etc., bringing the case within one or more of the grounds for equity jurisdiction must also be alleged and shown. In *Mann v. County Court*, 58 W.Va. 651, 52 S.E. 776 (1906), the Court expressed this rule in the following man-

---

7. There are a few exceptions to the general rule against enjoining enactment of a municipal ordinance. A concise summary of the circumstances justifying such an injunction is contained in *Smith v. Brock*, 83 R.I. 432, 118 A.2d 336 (1955):

> While conceivably a case might arise to justify intervention, it is clear that it will be rare and must allege extraordinary circumstances. In such event, the pleadings must make it manifest that the proposed ordinance is *ultra vires* or clearly invalid, and that the passage thereof *by itself* will occasion immedi-

ate, substantial and irreparable injury to a property or civil right of the taxpayer without any reasonably adequate remedy by subsequent proceedings at law.

83 R.I. at 436, 118 A.2d at 338 (emphasis in original). Enactment of a municipal ordinance may also be enjoined in the rare case where the mere adoption of the ordinance would occasion a multiplicity of suits. *See Noble v. City of Lincoln*, 153 Neb. 79, 88, 90, 43 N.W.2d 578, 584–85 (1950).

The respondent in this case has not shown the applicability of any of the exceptions.

ner: " 'Equity will not interfere to prevent the enforcement of a city ordinance simply on the ground of its illegality, nor will it assume jurisdiction to question ... the validity of the ordinance *per se*, for the purpose of protecting citizens from an uncertain and remote injury.[']' " 58 W.Va. at 656, 52 S.E. at 777 (citation omitted). Again, the "[u]nconstitutionality of the act is not alone sufficient to confer jurisdiction of such a suit or proceeding in equity. To this there must be added, for such purpose, some right or injury, respecting the person or property, not adequately remediable by any proceeding at law." Syl. pt. 10, *Coal & Coke Ry. v. Conley*, 67 W.Va. 129, 67 S.E. 613 (1910). *See generally* 6 E. McQuillin, *The Law of Municipal Corporations* §§ 20.25–20.26 (3d ed. rev. vol. 1980); 1 C. Antieau, *Municipal Corporation Law* § 4.49 (1986); 42 Am.Jur.2d *Injunctions* §§ 186, 187, 189, 190 (1969); 43A C.J.S. *Injunctions* § 127 (1978).

■ In this case the gravamen of the challenge to the validity of the ordinance appears to be that it is arbitrary and an abuse of discretion to transfer the assets and control of the City of Huntington's floodwall system from the Huntington Floodwall Board to the Department of Public Works. This challenge is without merit.

*W.Va.Code*, 8–16–2 [1969] authorizes a municipality to construct, own, maintain, operate, etc., any municipal public works. "Municipal public works" is defined in *W.Va.Code*, 8–16–1 [1981] to include flood control systems and floodwalls. The identity of the entity which is to control the municipal public works is set forth in *W.Va.Code*, 8–16–4 [1969].[8] That section of the statute provides that control of the municipal public works may be exercised by (1) the governing body, or (2) a committee of the governing body, or (3) a board or commission appointed by the governing body or (4) by a lessee authorized by ordinance.

Clearly, the legislature intended flexibility in this area and conferred much discretion upon the governing body of the municipality to determine, by ordinance, who is to control the municipal public works. We cannot say here that the City Council acted in a clearly arbitrary manner in conferring control of the floodwall system upon the Department of Public Works, which is, for this purpose, subject to the control of the City Council. Where a municipal corporation or the officers thereof act within well-recognized powers, or exercise discretionary power, a court is unwarranted in interfering by granting an injunction, unless fraud is shown, or the power or discretion is being manifestly abused, to the oppression of the citizen. *Hopkins v. City of Richmond*, 117 Va. 692, 710, 86 S.E. 139, 144 (1915), *overruled on another point*, *Irvine v. City of Clifton Forge*, 124 Va. 781, 782, 97 S.E. 310, 310 (1918).

Moreover, there is nothing in the petition for an injunction in this case to indicate

---

8. *W.Va.Code*, 8–16–4 [1969] provides in pertinent part as follows:

The construction, ... custody, maintenance and operation of any such works, and the collection of revenues therefrom, shall be under the supervision and control of the governing body, or of a committee, by whatever name called, composed of all or a portion of the governing body ..., or of a board or commission appointed by such governing body....

When such supervision and control are vested in a committee, board or commission, the governing body ... may provide, by ordinance or ordinances, for said committee, board or commission to exercise such of the functions of the governing body ... in connection with the matter as it ... deem[s] proper, ...

... [T]he term 'board' shall be construed to mean the governing body or committee composed of all or a portion of the governing body ..., or a board or commission appointed by the governing body ..., as the case may be....

The governing body ... also, in its ... discretion, may provide by ordinance or ordinances for the leasing of a municipal public works and provide for the custody, maintenance and operation thereof by a lessee in accordance with the provisions of such ordinance or ordinances and lease contract executed pursuant thereto[.]

The "governing body" of a municipality is defined in *W.Va.Code*, 8–1–2(b)(1) [1969] to "mean the mayor and council together, the council, the board of directors, the commission, or other board or body of any municipality, by whatever name called, as the case may be, charged with the responsibility of enacting ordinances and determining the public policy of such municipality; ..."

**50**

that enactment or enforcement of the ordinance would cause irreparable injury to the injunction petitioners or that there are no adequate remedies at law. An adequate remedy at law would be a declaratory judgment action,[9] which could be brought immediately after enactment of the ordinance to challenge its validity. *See* syl. pt. 4, *Farley v. Graney*, 146 W.Va. 22, 119 S.E.2d 833 (1960). "Injunctive relief, like other equitable or extraordinary relief, is inappropriate when there is an adequate remedy at law." *Hechler v. Casey*, 175 W.Va. 434, 440, 333 S.E.2d 799, 805 (1985), and the cases cited therein. " 'Equity does not have jurisdiction of a case in which the plaintiff has a full, complete and adequate remedy at law, unless some peculiar feature of the case comes within the province of [a court of] equity.' Syl. pt. 3, *Severt v. Beckley Coals, Inc.*, 153 W.Va. 600, 170 S.E.2d 577 (1969)." Syl. pt. 1, *Truby v. Broadwater*, 175 W.Va. 270, 332 S.E.2d 284 (1985).

Having improperly enjoined the enactment and enforcement of the municipal ordinance, the trial court exceeded its legitimate powers, and prohibition lies. In syl. pt. 4, *State ex rel. Ayers v. Cline*, 176 W.Va. 123, 342 S.E.2d 89 (1985), this Court stated the controlling principle:

'A writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction exceeds its legitimate powers.' Syl. pt. 1, *State ex rel. UMWA International Union v. Maynard*, [176] W.Va. [131], 342 S.E.2d 96 (1985).

*See also* syl. pt. 2, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985).

For the foregoing reasons the writ of prohibition is granted.

Writ granted.

---

**9.** See *W.Va.Code*, 55–13–2 [1941] and *W.Va. R.Civ.P.* 57 for provisions relating to declaratory judgment actions.